Jacqueline R. TITTLE, as Personal Representative of the Estate of Terry N. Tittle, Deceased, and on her own behalf, and Glen Alvin Cochran, by his next friend, Beth Ann Cochran, Appellants (Defendants Below),

v.

Michael MAHAN; David Meyers; David Gladieux; Glen Harpel; Oscar Equia; Daniel L. Figel, Sheriff of Allen County, Indiana; Rosemary Mosley; and the City of Fort Wayne, Appellees (Plaintiffs Below).

Betty Jean SAUDERS, Personal Representative of the Estate of Mark S. Sowles, Deceased, Appellant (Plaintiff Below),

v.

The COUNTY OF STEUBEN, State of Indiana; Lawnie M. McClelland, as Sheriff of Steuben County, Indiana; Steuben County Board of Commissioners; Gregory W. Aldrich and Mark Klink, Employees of the Steuben County Sheriff's Department, Appellees (Defendants Below).

No. 57S03–9112–CV–982.

Supreme Court of Indiana.

Dec. 12, 1991.

· John B. Powell, Shambaugh Kast Beck & Williams, Fort Wayne, for appellants Tittle and Cochran.

Kurt Bentley Grimm, Kevin L. Likes, Grimm & Grimm, P.C., Auburn, for appellant Sauders/Sowles.

Richard A. Waples, Legal Director, Ind. Civ. Liberties Union, Indianapolis, for amicus curiae Ind. Civ. Liberties Union.

Phillip A. Renz, Larry L. Barnard, Miller Carson & Boxberger, Fort Wayne, for appellee Mosley and City of Fort Wayne.

John O. Feighner, George Sistevarus, Haller & Covlin, Fort Wayne, for appellees Mahan, Myers, Gladieux, Harpel, Equia and Figel.

Branch R. Lew, Hunt Suedhoff Borror & Eilbacher, Fort Wayne, Helen M. Burke, Scopelitis Garvin Light & Hanson, Indianapolis, for appellees Steuben County, McClelland, Bd. of Comm. and Aldrich & Klink.

ON PETITION TO TRANSFER

KRAHULIK, Justice.

The two cases before us today on petitions to transfer have been consolidated because both require us to construe a portion of the Indiana Tort Claims Act, IND. CODE ANN. § 34–4–16.5–3(7) (West Supp. 1990), and decide whether law enforcement officials and their employers are immune from liability in connection with the treatment of pre-trial detainees. We now grant transfer to re-evaluate some of our earlier statements in *Seymour Nat'l. Bank v. State* (1981), Ind., 422 N.E.2d 1223, *mod. on reh'g.* 428 N.E.2d 203, and conclude that the immunity granted by Section 3(7) of the Tort Claims Act does not encompass the treatment of pre-trial detainees and is limited to circumstances surrounding the apprehension of suspects.

FACTS

In the first case, Jacqueline R. Tittle, individually and as personal representative of the estate of Terry N. Tittle, and Glen Alvin Cochran, by his next friend Beth Ann Cochran, (collectively, "Tittle") (Plaintiffs–Appellants below) seek transfer after the Court of Appeals affirmed the entry of summary judgment in favor of Michael Mahan, David Meyers, David Gladieux, Glen Harpel, Oscar Equia, Daniel L. Figen (collectively "jail defendants"), Rosemary Mosley and the City of Fort Wayne (collectively "police defendants") (Defendants–Appellees below). *Tittle v. Mahan* (1991), Ind. App., 566 N.E.2d 1064.

The facts pertinent to this appeal follow. On April 14, 1987, Terry Tittle was arrested and charged with criminal deviate conduct, robbery and burglary. He was transported to the Allen County jail and custody

was transferred from the police defendants to the jail defendants. He was interviewed that day and the next day by Mosley, a Fort Wayne police officer. During these interviews, Terry told Mosley that he was depressed. Mosley was also informed by Terry's mother that he had previously attempted suicide. Apparently, this information was not passed along from the police defendants to the jail defendants or anyone at the Allen County jail. On April 16, 1987, Terry was transferred to a cell at the Allen County jail. An observation order was issued by the jail nurse and "suicide precautions" was checked as the purpose of the order. On April 18, 1987, in his jail cell, Terry committed suicide by self-strangulation.

His personal representative brought suit against both the police defendants and the jail defendants alleging negligence and a deprivation of constitutional rights under 42 U.S.C. § 1983. All defendants filed motions for summary judgment on the grounds that (1) the Indiana Tort Claims Act rendered them immune from liability for negligence because they had been involved in the enforcement of a law at the time of their dealing with Terry; and (2) that Tittle had not established the requisite standard of "deliberate indifference" in the Section 1983 action. The trial court granted all motions for summary judgment and the Court of Appeals affirmed.

In the other case, Betty Jean Sauders, as the personal representative of the estate of Mark S. Sowles (Plaintiff–Appellant below), seeks transfer after the Court of Appeals affirmed the entry of summary judgment in favor of Steuben County, State of Indiana, Lawnie McClelland, Steuben County Board of Commissioners, Gregory Aldrich and Mark Klink (collectively "jail defendants") (Defendants–Appellees below). *Sauders v. County of Steuben* (1991), Ind. App., 564 N.E.2d 948.

The facts relevant to this appeal follow. On April 28, 1986, an automobile driven by Sowles collided with the rear of a police patrol vehicle driven by an Angola city police officer. An Indiana state trooper investigated the accident and arrested Sowles. Tests showed his blood alcohol level to be .15 per cent. Because IND.CODE ANN. § 35–33–1–6 (West 1986) required Sowles to be incarcerated for at least four hours, he was transported to the Steuben County jail at approximately midnight, where he was processed by Aldrich, an employee of the Sheriff's Department, and placed alone in a two-person cell at 12:35 a.m. At 1:17 a.m., Sowles was found unconscious with a noose of blanket strips knotted around his neck. Despite resuscitation attempts and subsequent medical treatment, Sowles never regained consciousness. He remained in a permanent vegetative state until he died on July 13, 1988. Sauders filed suit alleging that the jail defendants had been negligent in their care and custody of the decedent. All defendants filed motions for summary judgment on the grounds that they were immune under the Indiana Tort Claims Act because they had been enforcing the law with respect to their treatment of Sowles. Those motions were granted by the trial court and affirmed by the Court of Appeals.

*Indiana Tort Claims Act*

Governmental immunity is controlled by the Indiana Tort Claims Act, IND.CODE ANN. § 34–4–16.5–1, *et seq.* (West 1983 and Supp.1990). In general, governmental entities and their employees are subject to liability for torts committed by them, unless the activity giving rise to the tort falls within the exceptions enumerated in the Tort Claims Act. *Peavler v. Monroe County Bd. of Comm'rs.* (1988), Ind., 528 N.E.2d 40, 42. The exception at issue here is found at IND.CODE § 34–4–16.5–3, which provides:

> A governmental entity or employee acting within the scope of his employment is not liable if a loss results from:
>
> \*    \*    \*    \*    \*    \*
>
> (7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

Answering the question of whether the act of placing and maintaining a pre-trial detainee in a jail cell is "enforcement of a law" determines whether the law enforcement defendants are entitled to immunity by virtue of the Tort Claims Act. Tittle and Sauders assert that once a person is placed in a cell, treatment of that person by law enforcement personnel is not "enforcing a law" within the meaning of the Tort Claims Act and, therefore, no immunity exists. The jail defendants, on the other hand, argue that, because the activity of placing and maintaining a pre-trial detainee in jail is one of the legal duties imposed on a law enforcement officer and is within the scope of the officer's employment, it is among the activities included within the term "enforcement of a law."

### Status of Common Law When Tort Claims Act Enacted

At the time the Tort Claims Act was enacted, the courts of this State had determined that the king not only could do *much* wrong, but also could be held accountable for such wrongs. The doctrine of sovereign immunity for breaches of a private duty had been virtually abolished by judicial decisions. In *Brinkman v. City of Indpls.* (1967), 141 Ind.App. 662, 231 N.E.2d 169, the appellate court abandoned the governmental/proprietary rule and abolished sovereign immunity from tort liability for municipalities, even in their governmental capacity. A year later, the appellate court in *Klepinger v. Bd. of Comm'rs.* (1968), 143 Ind.App. 178, 239 N.E.2d 160, applied the *Brinkman* rule to the counties of Indiana. The following year, this Court held that the State was exposed to liability for proprietary functions and reserved decision on whether immunity would still exist for the State for its governmental actions and functions. *Perkins v. State* (1969), 252 Ind. 549, 251 N.E.2d 30. Finally, in *Campbell v. State* (1972), 259 Ind. 55, 284 N.E.2d 733, this Court abolished the governmental/proprietary rule and held that sovereign immunity was no longer applicable to the State. In so holding, however, this Court recognized that the State would only be responsible in damages for a breach of duty owed to a private individual. To illustrate the retention of immunity against suits for breach of a public duty, this Court in *Campbell* cited *Simpson Food Fair v. City of Evansville* (1971), 149 Ind.App. 387, 272 N.E.2d 871, in which the Court of Appeals had held that the City of Evansville was immune from liability for breach of its public duty to provide adequate police protection. Thus, at the time of the enactment of the Indiana Tort Claims Act, the common law was that governmental entities were not immune from tort claims resulting from a governmental entity employee's breach of a private duty owed to an individual, but governmental entities were immune from claims resulting from a breach of its public duties owed to all.

### Cases Following the Indiana Tort Claims Act

The Indiana General Assembly reacted to the above-cited judicial decisions by enacting the Indiana Tort Claims Act. The Act established limitations on the judicially-decreed rights to sue and recover from governmental entities and their employees. The Act did not create a right to sue a governmental entity or its employees, but, instead, regulated the common law right to bring such actions by enacting notice requirements, limitations on recovery, and immunity provisions. By enacting the immunity provisions, the Indiana General Assembly granted immunity for, among other things, the "adoption and enforcement of or failure to adopt or enforce a law."

It was not until 1981 that this Court first was presented with the question of what constitutes "enforcement of a law" as used in Section 3(7). In *Seymour National Bank v. State*, 422 N.E.2d 1223, we concluded that the State was immune from liability for the alleged negligence of a state trooper in operating his police car during a high speed chase of a criminal suspect. Rather than focusing, as the common law would have required, on what, if any, duty had been violated, the basis for the ruling was, simply, that "an officer engaged in effecting an arrest is in fact

enforcing a law." 422 N.E.2d at 1226. We continue to agree that, given the facts presented in *Seymour,* the result reached in that case was correct. However, the opinion on rehearing also contains dicta which suggests that any act within the scope of a law enforcement official's employment is immune. 428 N.E.2d at 204. We do not believe this reflects the legislature's intention.

These two present consolidated cases, along with case of *City of Wakarusa* (1991), Ind., 582 N.E.2d 802, which we also *decide today,* present this Court with an opportunity to revisit *Seymour* and determine the extent of police conduct which remains immune under the umbrella of the Tort Claims Act "law enforcement immunity." The dicta contained in *Seymour* appears to have been the basis for a variety of cases decided by the Court of Appeals extending "law enforcement immunity" to protect such acts as damaging a plaintiff's home by firing cannisters of tear gas into it in order to apprehend a fleeing murder suspect, *Indiana State Police v. May* (1984), Ind.App., 469 N.E.2d 1183, assisting another officer in the investigation of a personal injury accident, *Weber v. City of Fort Wayne* (1987), Ind.App., 511 N.E.2d 1074, failing to guard a prisoner who escaped and shot a bystander, *City of Gary v. Cox* (1987), Ind.App., 512 N.E.2d 452, and giving flares at the scene of an accident to a truck driver who was struck by a car while setting out the flares, *McFarlin v. State* (1988), Ind.App., 524 N.E.2d 807. In fact, the observation of Judge Sullivan in his concurring opinion in *McFarlin,* to the effect that any action taken by a law enforcement official within the scope of his employment is immune under the holdings of the Court of Appeals' decisions which followed *Seymour,* appears to be an accurate assessment of the direction taken by Indiana courts. We do not agree that this extension of the *Seymour* holding is warranted.

In *Seymour,* we concluded that the term "enforcement of the law" was not ambiguous because an officer engaged in effecting an arrest was, in fact, enforcing the law.

422 N.E.2d at 1226. We continue to agree that effecting an arrest is enforcing the law and that the actions taken by a police officer in effecting an arrest cannot give rise to a claim because of the immunity provisions of Section 3(7). However, to extend the immunity granted by Section 3(7) to police activities beyond those actions surrounding the effecting of an arrest is tantamount to refusing to strictly construe the Tort Claims Act in abrogation of our rules of statutory construction.

In fact, these consolidated cases make evident this point. Here, defendants essentially argue that placing and maintaining pre-trial detainees in a jail cell is intimately connected with the notion of "law enforcement" because the law requires the jail defendants to place and maintain a pre-trial detainee in jail. Under this analysis, arguably all acts of a law enforcement official would constitute enforcement of a law, because most acts of law enforcement officials are in response to a statutory mandate. Such a broad construction of Section 3(7) is not warranted.

Two rules of statutory construction lead us to this conclusion. First, a statute (such as the Tort Claims Act) which is in derogation of the common law must be strictly construed against limitations on a claimant's right to bring suit. *Collier v. Prater* (1989), Ind., 544 N.E.2d 497, 498. Secondly, when the legislature enacts a statute in derogation of the common law, this Court presumes that the legislature is aware of the common law, and does not intend to make any change therein beyond what it declares either in express terms or by unmistakable implication. *State Farm Fire & Cas. Co. v. Structo Div., King Seeley Thermos Co.* (1989), Ind., 540 N.E.2d 597, 598.

Simply stated, at the time the Tort Claims Act was enacted, the common law was such that private citizens injured by the negligent acts of law enforcement officials were free to seek relief from those at fault. *Simpson Food Fair, supra.* Thus, the question becomes to what extent the Legislature intended to alter this state of the common law.

In *Seymour* we concluded that the plain meaning of "enforcement of a law" included activities of a law enforcement officer in the course of apprehending a suspect, which activity required split second timing and decision-making. Here, we conclude that the plain meaning of "enforcement of a law" does not include activities associated with the administration of pre-trial detainees at a county jail. We view a sheriff's compliance with the legal obligations established by statute, IND.CODE ANN. § 36-2-13-5(a)(7) (West, 1983), and case law, *see e.g. Health and Hosp. Corp. v. Marion County* (1984), Ind.App., 470 N.E.2d 1348, as constituting compliance with the law rather than enforcement of it. Many of the job functions of law enforcement officials involving operation of jails and maintenance of prisoners are administrative and custodial in nature, and cannot fairly be characterized as "law enforcement" within the meaning of the Tort Claims Act.

We perceive the activities included within the term "enforcement of a law" to be limited to those activities attendant to effecting the arrest of those who may have broken the law. In these two cases, we hold that immunity does not extend past the arrest.

### Application of Law to Facts of These Cases

■ The gist of Tittle's negligence complaint is that the police defendants failed to forward information pertinent to the decedent's alleged suicidal tendencies, and that the jail defendants failed to appropriately monitor him in the jail cell, or otherwise failed to respond to his medical needs. At the time these acts took place, Tittle was in the custody of the jail defendants who were not "enforcing a law" within the meaning of the Tort Claims Act and, therefore, were not immune from tort liability. Because genuine issues of material fact exist about whether the jail defendants, in fact, breached any private duty owed by them to Tittle, summary judgment is not appropriate. With regard to the police defendants, the facts are undisputed that they were not engaged in providing custodial confinement of the deceased, but

instead were engaged in the performance of their public duty of investigating the circumstances surrounding the decedent's alleged commission of the crime of rape. Their conduct in carrying out that investigation by interviewing the decedent and his mother did not violate any private duty owed to the decedent. Thus, the entry of summary judgment in their favor was appropriate.

■ The gist of Sauders' negligence action is that the jail defendants failed to (1) monitor the decedent adequately and (2) recognize his tendency toward self-destructive behavior. These alleged failures occurred while the decedent was confined to a jail cell. Accordingly, the Tort Claims Act does not provide immunity to these defendants. Because there remain genuine issues of material fact about whether the jail defendants breached any private duty owed by them to Sowles, summary judgment is inappropriate.

### 42 U.S.C. § 1983

■ Tittle's complaint also included a claim against various defendants pursuant to 42 U.S.C. § 1983. First, we note that Section 1983 does not provide a remedy for a negligent act of an official which caused unintended loss or injury to life, liberty, or property. *Daniels v. Williams* (1986), 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662; *Davidson v. Cannon* (1986), 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677. Additionally, our review of the record does not reveal that any of the jail defendants were actually aware of the decedent's suicidal state and were deliberately indifferent to such state. We, therefore, conclude that summary judgment was appropriately entered against Tittle on the 42 U.S.C. § 1983 claim. *See, Freedman v. City of Allentown* (3d Cir.1988), 853 F.2d 1111.

### CONCLUSION

Accordingly, we grant transfer, vacate the opinions of the Courts of Appeal to the extent that they relate to the application of IND.CODE § 34-4-16.5-3(7), affirm the trial court's entry of summary judgment in fa-

vor of Mosley and the City of Ft. Wayne in its entirety, affirm the trial court's entry of summary judgment in favor of Mahan, Meyers, Gladieux, Harpel, Equia, and Figel on the 42 U.S.C. § 1983 claim, but reverse the trial court's entry of summary judgment in favor of these defendants on the negligence claim, and reverse the trial court's entry of summary judgment in favor of the County of Steuben, Lawnie M. McClelland, as Sheriff of Steuben County, Steuben County Board of Commissioners, Gregory W. Aldrich, and Mark Klink.

DeBRULER and DICKSON, JJ., concur.

SHEPARD, C.J., concurs in result but does not join in the Court's interpretation of IND.CODE § 34-4-16.5-3(7).

GIVAN, J., dissents and concurs, with separate opinion.

ON CIVIL PETITIONS TO TRANSFER

GIVAN, Justice, dissenting and concurring.

I respectfully dissent from the majority opinion in that it holds that officers exercising custodial care over prisoners are not protected under the exception to the Tort Claims Act, Ind.Code § 34-4-16.5-3. I agree with the majority holding that the arresting officers in each case were protected by the immunity section of the statute. However, I agree with the Court of Appeals opinion in each case in their holding that maintaining custody over a prisoner in fact is law enforcement.

As far as the operation of the statute is concerned, I can discern no difference between arresting and detaining a person in the public sector or forcibly detaining that person in a jail facility following the arrest.

I would affirm the trial courts in both cases.