**Tricia B. QUAKENBUSH, Samuel McAfee, Mac Medlin and Larry Allen, Appellants–Plaintiffs,**

v.

**Florence E. LACKEY and City of Indianapolis, Appellees–Defendants.**

No. 49A04–9204–CV–113.

Court of Appeals of Indiana, Fourth District.

Dec. 14, 1992.

William D. Hall, Greenwood, Alex Rogers, Indianapolis, for appellants-plaintiffs.

Mary Ann G. Oldham, Indianapolis, for appellees-defendants.

CHEZEM, Judge.

### Case Summary

Plaintiffs–Appellants, Tricia Quakenbush, Samuel McAfee, Mac Medlin, and Larry Allen (sometimes collectively, "Appellants"), appeal from summary judgment granted to Defendants–Appellees, Florence E. Lackey and City of Indianapolis (Lackey). We affirm.

### Issue

Whether Lackey was entitled to summary judgment based upon immunity under the Indiana Tort Claims Act.

### Facts and Procedural History

Lackey, a patrol officer for the Indianapolis Police Department, was dispatched to a report of a man beating a woman in a parking lot. Lackey, driving a marked police car, was going to the disturbance at the time of the accident. Lackey crossed an intersection against the red light when her vehicle struck Quakenbush's vehicle. Quakenbush had entered the intersection on a green light. Lackey had no red or blue lights flashing, no siren on, no horn blowing, and no spotlight shining. She approached the intersection with only her headlights on. Medlin, Allen, and McAfee's claims were consolidated with Quakenbush's claim because they were passengers in Quakenbush's vehicle at the time of the accident. The trial court found that:

> [U]nder the uncontroverted facts of this case, the Defendant police officer, Florence Lackey, was, in the words of our supreme court in *City of Wakarusa v. Holdeman* [ (1991), Ind., 582 N.E.2d 802, *reh. denied* ], involved in an '. . . activity attendant to effecting the arrest of those who may have broken the law . . .'. As such she was engaged in the 'enforcement of a law' and entitled to law enforcement immunity under the Indiana Tort Claims Act.

### Discussion and Decision

When reviewing a summary judgment, the standard of review is whether there was no genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Ind.Rul.Tr. Proc.*, Rule 56(C); *Farm Bureau Co-op v. Deseret Title Holding Corp.* (1987), Ind. App., 513 N.E.2d 193, *reh. denied; Interstate Auction Inc. v. Central Nat'l. Ins. Group, Inc.* (1983), Ind.App., 448 N.E.2d 1094, 1097. There are no issues of material fact which present error by the trial court. We must decide whether Lackey is entitled to immunity and therefore judgment as a matter of law.[1]

Governmental entities and their employees such as police officers are subject to liability for torts committed by them, unless the activity giving rise to the tort falls within the exceptions enumerated in the

---

1. Our supreme court vacated the opinions of the Court of Appeals to the extent that they relate to the application of the Indiana Tort Claims Act and the issue of immunity for those who enforce the law. *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796, 801. We are limited in precedent to cases whose holdings are not superseded by the holdings in *Tittle v. Mahan*. Appellants filed a Motion for Additional Authority which cited to an unpublished opinion of the Indiana Court of Appeals. Indiana Appellate Rule 15(A)(3) prohibits the citation of unpublished authority in a brief filed with the Indiana Court of Appeals. We have held that it is inappropriate to cite unpublished opinions to the Court. *Miller Brewing Company v. Best Beers of Bloomington* (1991), Ind.App., 579 N.E.2d 626, 633, n. 4, *reh. denied; Qazi v. Qazi* (1986), Ind.App., 492 N.E.2d 692, 693, n. 2. *reh. denied, trans. denied; Drake v. City of Gary* (1983), Ind.App., 449 N.E.2d 624, 626, n. 1; *Warner v. State* (1980), Ind.App., 406 N.E.2d 971, 973, n. 8.

Tort Claims Act. *Id.* at 798; *Peavler v. Monroe County Bd. of Comm'rs* (1988), Ind., 528 N.E.2d 40, 42, *remand,* 557 N.E.2d 1077, *trans. denied.* Lackey claims an exception from liability under the Tort Claims Act:

> A governmental entity or employee acting within the scope of his employment is not liable if a loss results from:
>
>     *     *     *     *     *     *
>
> (7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

I.C. § 34–4–16.5–3(7).

■ Appellants argue that Lackey is not entitled to immunity because her actions were not attendant to effecting an arrest. "Enforcement of a law" means "those activities attendant to effecting the arrest of those who may have broken the law." *Tittle,* 582 N.E.2d at 801. "[U]nless the injuries for which a plaintiff seeks recovery arose out of the actual attempts to effect an arrest of one who may have broken the law, there is not immunity to be found in Section 3(7)." *Wakarusa,* 582 N.E.2d at 803. We hold that the phrase "actual attempts to effect an arrest of one who may have broken the law" includes actions of officers dispatched to investigate identifiable criminals who may be in the act of committing crimes which increase the likelihood of immediate physical injury to others.

Our supreme court has demonstrated a willingness to extend immunity to officers in such situations:

> In *Seymour National Bank v. State,* 422 N.E.2d 1223, we concluded that the State was immune from liability for the alleged negligence of a state trooper in operating his police car during a high speed chase of a criminal suspect. Rather than focusing, as the common law would have required, on what, if any, duty had been violated, the basis for the ruling was, simply, that an officer engaged in effecting an arrest is in fact enforcing the law. 422 N.E.2d at 1226. We continue to agree that, given the facts presented in *Seymour,* the result reached in that case was correct.

*Tittle,* 582 N.E.2d at 799–800.

■ This is not to say that *any* act within the scope of a police officer's duties merits immunity. Administrative and custodial duties performed by officers after an arrest do not warrant immunity. *Id.; see City of Valparaiso v. Edgecomb* (1992), Ind., 587 N.E.2d 96 (an officer leading a funeral procession is not effecting an arrest). Contrary to the dissent's characterization of the beating as a mere "squabble," an officer responding to a report of one inflicting physical injury onto another cannot be paralleled to "patrolling the highways looking for expired plates, issuing a parking ticket or a summons, obeying a superior's order while escorting a funeral procession, responding to a non-emergency radio dispatch, investigating an unleashed dog, directing traffic, or occupied with any of the many other duties and services required of a police officer...." *Dissent, infra.* Lackey, like the officer in *Seymour,* was "in the course of apprehending a suspect, which activity required split second timing and decision-making." *Tittle,* 582 N.E.2d at 801. Lackey was dispatched to a scene where a man was allegedly beating a woman in a parking lot. An officer so dispatched cannot make an arrest without first arriving at the scene, and the act of getting to the scene is part of the same transaction as the act of acquiring physical custody over the criminal.[2] We do

---

2. The fact that other police officers were at the scene before Lackey does not mean her activities were not attendant to effecting an arrest. Nor does it mean there was no need for assistance from Lackey. The dispatch implies she was needed to secure an arrest. It is not relevant that she volunteered to take the call. Such was her duty and is quite common when a dispatch is broadcasted to all officers in an area. The fact remains that there was a dispatch regarding one who was inflicting physical injury

not distinguish between emergency and non-emergency dispatches when there is a report of one inflicting physical injury onto another.

Allowing officers immunity only for acts committed while the criminal is in custody strips officers of necessary immunity. Many police dispatches involve dangerous fleeing felons or violent persons who most likely would flee if it were known that the police were called. Public safety will be endangered if our interpretation of "actual activities attendant to effecting an arrest" is too narrow. The active pursuit of dangerous criminals and quick responses to calls of illegal activity will be reduced if officers must fear personal liability.

Appellants urge us to apply *Wakarusa*. Lackey's situation can be distinguished from that in *City of Wakarusa v. Holdeman*. The officer in *Wakarusa* was not dispatched to a crime scene and was not granted immunity because there was no identifiable criminal. Such is not the case for Lackey. The dispatch to Lackey indicated that there was an identifiable person who may have broken the law and who was

inflicting physical harm on another person. Thus, Lackey is entitled to immunity.

We must qualify our position on immunity to the extent that our next step should be to decide whether Lackey acted within the scope of her employment. Lackey is not entitled to immunity unless she acted "within the scope of [her] employment." I.C. § 34–4–16.5–3(7).[3] This is an entirely separate issue from the issue of whether Lackey was making actual attempts to effect an arrest of one who may have broken the law. Although the Police Review Board found otherwise, in their complaint Appellants alleged that Lackey was within the scope of her employment when the accident occurred. Lackey and the City of Indianapolis admitted such in their replies to the complaint. Therefore, we do not consider the issue of scope of employment due to the agreement of all parties.

Affirmed.

BAKER, J., concurring with separate opinion.

MILLER, J., dissenting with separate opinion.

---

onto another. To state that because she did not arrive at the scene means she was not needed ignores the reality of the situation before the accident. Although hindsight provides 20/20 vision, we cannot expect an officer to be able to see into the future to determine whether they will, in fact, be needed to secure an arrest. Officers must assume that once they accept a dispatch, it is necessary for them to arrive at the scene.

3. It is well-settled that "a statute (such as the Tort Claims Act) which is in derogation of the common law must be strictly construed against limitations on a claimant's right to bring suit." *Tittle*, 582 N.E.2d at 800; *Collier v. Prater* (1989), Ind., 544 N.E.2d 497, 498. Under a canon of strict construction, Lackey may have acted outside of the scope of her employment when she violated Indianapolis Police Department General Order 8.00, Section V.C., which states:

1. Police vehicles approaching a red traffic signal or stop sign shall stop and yield the right-of-way to all moving vehicles and pedestrians within the intersection and to those approaching in a manner which would cause them to become a hazard. The police vehicle operator may proceed with caution only when the way is clear.

2. Only when responding to an emergency situation, or when properly operating a Departmental vehicle under pursuit conditions may an officer disregard an automatic traffic control signal or stop sign. In both instances, however, the officer shall approach the intersection with caution and be prepared to stop. The officer may proceed only when the way is clear.

It is undisputed that Lackey did not stop and yield the right-of-way at the intersection. Lackey did not have her lights and sirens on at the time of the accident and she acted in violation of Departmental rules. A finding that Lackey did not act within the scope of employment for purposes of immunity does not impute negligence onto her. In such case, "the controlling question becomes whether defendants owed plaintiff a private duty for the breach of which the law permits a recovery." *Wakarusa*, 582 N.E.2d at 804. We do not consider this issue due to the stipulations of all parties. Nonetheless, an officer who follows departmental protocol will most likely not behave negligently and should be granted immunity if all requirements for immunity are satisfied.

BAKER, Judge, concurring.

I agree with the result Judge Chezem reaches. Florence Lackey was enforcing a law and is entitled to summary judgment based upon her immunity under the Indiana Tort Claims Act.[1]

A police officer acting within the scope of her employment is not liable for losses resulting from the enforcement of a law. IND.CODE 34-4-16.5-3(7). Our supreme court has interpreted the term "enforcement of a law" to include only a narrow category of police activity. Specifically, "the activities included within the term 'enforcement of a law' [are] limited to those *activities attendant to effecting the arrest* of those who may have broken the law." *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796, 801 (enphasis added).

"Attendant to effecting the arrest" is not the only phrase the supreme court has used to describe what it meant by "enforcement of a law" in the Tort Claims Act context, however. In *Tittle*'s companion case, *City of Wakarusa v. Holdeman* (1991), Ind., 582 N.E.2d 802, 803, our supreme court wrote "unless the injuries for which a plaintiff seeks recovery *arose out of the actual attempts to effect an arrest* of one who may have broken the law, there is no immunity to be found in Section 3(7)." (Emphasis added.)

There are other variations, too. In addition to the "attendant to effecting the arrest" phrase, *Tittle* also uses the words "*surrounding* the effecting of an arrest," 582 N.E.2d at 800 (emphasis added), and approves of its earlier conclusion in *Seymour National Bank v. State* (1981), Ind., 422 N.E.2d 1223, *mod. on reh'g*, 428 N.E.2d 203, *appeal dismissed*, 457 U.S. 1127, 102 S.Ct. 2951, 73 L.Ed.2d 1344 (1982), "that the plain meaning of 'enforcement of a law' included activities of a law enforcement officer *in the course of apprehending a suspect*, which activity required split second timing and decision-making." *Tittle, supra*, at 801 (emphasis

added). Although all four variations appear to be of equal significance, our supreme court seems to favor the "activity attendant to effecting the arrest" phrase. Unlike the others, which appear only once, the "attendant to" phrase appears again in *City of Wakarusa* and still again in *City of Valparaiso*.

Judge Chezem and Judge Miller both concentrate on the "actual attempts" language of *City of Wakarusa*. This strikes me as inappropriate for two reasons. First, it ignores the supreme court's other variations; the task of interpreting "enforcement of a law" is difficult enough without limiting ourselves to just the "actual attempts" language. We have been told that "activities attendant to effecting an arrest," "activities surrounding the effecting of an arrest," and "activities in the course of apprehending a suspect" are also correct interpretations of "enforcement of a law"—why ignore them? Second, "actual attempts to effect an arrest" strikes me as being the most limiting of the four variations. When the phraseology is considered as a whole, a clearer picture emerges of which police activities will be subject to immunity.

We cannot—or at least ought not—consider the language without also considering the context in which each phrase arose, because ultimately we have to decide whether Florence Lackey was "enforcing a law" when she collided with the Quackenbush car. In *Tittle*, our supreme court held "enforcement of a law" does not include activities associated with the administration of pre-trial detainees at a county jail. In *City of Wakarusa*, it decided that an officer whose vehicle collided with another while the officer was looking for recreational vehicles without the required license plates and registration was not enforcing a law. In *City of Valparaiso*, it concluded that an officer leading a funeral procession was not engaged in enforcing a law.

These three cases illustrate police activity that is *not* "enforcement of a law."

1. IND.CODE 34-4-16.5-1 *et seq.*

There is one case, however, in which our supreme court did, in fact, find immunity based on law enforcement. In *Seymour National Bank*, a state trooper operating his cruiser during a high speed chase of a criminal suspect was found to be immune from liability because he was effecting an arrest.

Here, a husband was beating his wife in a parking lot.[2] Officer Lackey was summoned. While responding to the call of duty, she collided with the Quackenbush vehicle. She was not merely performing a routine and generic police function, as was the case in *Tittle, City of Wakarusa*, and *City of Valparaiso*. Instead, her situation is much more akin to the high speed chase of *Seymour National Bank*, where an officer had notice of a crime and was responding. If the trooper in *Seymour* was effecting an arrest while chasing a suspect, as the supreme court held, surely Officer Lackey, at a minimum, was engaged in activity *attendant to* the effecting an arrest, *surrounding* an arrest, *in the course of* apprehending an arrest, and, yes, even *actually attempting* to effect an arrest when she sped to the victim's rescue.

Under each of these phrases, Officer Lackey was plainly enforcing the law. The result is even clearer if we favor the "attendant to" phrase, because "attendant" means "an accompanying thing or circumstance; a consequence or concomitant." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 85 (4th printing 1969). Officer Lackey was required to drive her vehicle to the scene before she could stop the beating; although her driving was not the effecting of an arrest, it certainly was concomitant to effecting an arrest. I simply cannot escape the conclusion that an officer driving to the scene of a beating is engaged in activity attendant to effecting an arrest. Because Officer Lackey was acting within the scope of her employment and was enforcing the law, she is immune from liability under the Act. For this reason, I concur with the result Judge Chezem has reached.

MILLER, Judge.

I believe the majority—relying on superseded case law—ignores the clear language of our supreme court. In *Tittle v. Mahan* (1991), Ind., 582 N.E.2d 796, and *City of Wakarusa v. Holdeman* (1991), Ind., 582 N.E.2d 802, our supreme court sharply limited the scope of the law enforcement exception to the Indiana Tort Claims Act holding that "unless the injuries for which a plaintiff seeks recovery arose out of the *actual attempts* to effect an arrest ... there is no immunity to be found in Section 3(7) [of the Tort Claims Act]." *City of Wakarusa, supra,* at 803 (emphasis added).

In spite of this clear mandate, the majority affirms. I would reverse and remand for trial.

### FACTS

At about 11:24 p.m. on March 24, 1989, Indianapolis Police Officer Florence E. Lackey was fueling her police car at 21st and Sherman [R. 183] when she heard the following radio traffic:

> Dispatcher. "B333 and 425, B333 and 425, domestic disturbance, 9029 East Pinehurst, South Drive, Oaktree Apartments. A man beating a woman, in the parking lot."

R. 58 (Official Police Transcript of Radio Traffic). Lackey, radio call B337, decided to respond:

> "B337 to dispatcher"

*Id.*

Before she could, unit B333 acknowledged the call:

> B333. "38th and Mitthoeffer" [One mile east of the location].

*Id.*

The rest of the radio traffic is as follows:

---

**2.** I must also register my disapproval of the dissent's reference to the beating as a "domestic disturbance." My colleague is, unfortunately, merely reciting the moniker used by counsel at trial. Officer Lackey was responding to a man physically attacking a woman, a reprehensible yet all too common crime in our society. There can be no question the report of this crime warranted an immediate police response.

Dispatcher. "Units are covering. 337—are you trying to volunteer for the run?"

B337. "It's on me. What's the apartment number again?"

Dispatcher. "It's happening in the parking lot. Complainant refused any information, just in the parking lot."

337. "Okay, I'm on the interstate, almost about Post." [1]

*Id.* 58. (Information in [ ] added).

After volunteering for this non-emergency [2] run and narrowly avoiding a collision at 30th and Post, Lackey ran a red light at 38th and Post and struck another vehicle, hospitalizing herself, the driver and two passengers of the other car. Her police car was demolished and the other car sustained damages of $2175. The Record shows Lackey testified that as she reached the intersection of 38th and Post, she could see ten (10) officers already on the scene [R. 212–213], which was the parking lot of—in Lackey's words—a "Go–Go Bar." R. 255. This bar is also described as a "Topless Bar" at R. 85. Lackey was driving at a very high rate of speed and was not using her red/blue roof lights, siren, horn, or spotlights.

Lackey moved for summary judgment claiming that she was immune from suit. Both trial courts and the majority conclude

that the above litany shows that Lackey was "enforcing the law" and therefore, neither she nor her employer are responsible for her actions. I disagree.

## DISCUSSION

Governmental immunity is controlled by the Indiana Tort Claims Act (Act). In general, governmental entities and their employees are subject to liability for torts committed by them, unless the activity giving rise to the tort falls within the exceptions enumerated in the Act. *Peavler v. Monroe County Bd. of Comm'rs* (1988), Ind., 528 N.E.2d 40, 42. At the time the Act was enacted,[3] Indiana courts had determined that the king not only could do *much* wrong, but also could be held accountable for such wrongs. *Tittle, supra,* at 799. The doctrine of sovereign immunity for breaches of a private duty had been virtually abolished by judicial decisions. *Id.*

The legislature responded by enacting the Act and limited the judicially created rights to sue and recover from governmental entities and their employees. *Id.* The Act did not create a right to sue, but instead, regulated the common law right to bring such actions. The legislature granted immunity from suit for, *inter alia,* the "adoption and enforcement of or failure to

---

1. This location is about two and a half miles (2½) south and west from the reported domestic disturbance. In her deposition, Lackey testified that she actually was at 21st and Sherman, which is about five miles west of Post and I–70. R. 183. The Indianapolis City Map indicates that the route Lackey took from 21st and Sherman to 38th and Post is a distance of about seven and one half (7½) miles. The Police Transcript of Radio Traffic [R. 58–59] shows that six minutes and thirty-one seconds elapsed—between the time she acknowledged the run and when she reported the accident—which includes the time she needed to complete the fueling of her vehicle at 21st and Sherman and the time she was stunned and unable to reach her radio immediately following the accident.

2. The Indianapolis Police Review Board made, *inter alia,* the following findings:
   a. *Officer Lackey was on a non-emergency run.* (Emphasis added).

   b. She violated the Department Policies at the time of the collision.
   c. She was not in control of the police car during that time.
   d. The light was red at the time for her.
   e. She could have prevented it from happening *as she was responding to assist officers already on the scene of a domestic disturbance.* (Emphasis added.)
   Tr. Vol. I, p. 149.
   The experts, here Lackey's fellow officers, consider this type of call to be a non-emergency. It requires an immediate response, but not an emergency response—IPD recognizes that there is a difference. I refer my colleagues to R. 145–148A, the official IPD vehicle operator's guide, for IPD procedures.

3. The first version was I.C. 34–4–16.5–1 et seq. (1971). The current version was enacted in 1974.

adopt or enforce a law." *Id.* Our supreme court first addressed the meaning of this phrase in *Seymour National Bank v. State* (1981), Ind., 422 N.E.2d 1223, *mod. on reh'g,* 428 N.E.2d 203, *appeal dismissed by,* 457 U.S. 1127, 102 S.Ct. 2951, 73 L.Ed.2d 1344 (1982). The court found that the State was immune from liability for the alleged negligence of a state trooper in operating his patrol car during a high speed chase of a criminal suspect. The basis for the court's ruling was that "an officer engaged in effecting an arrest is in fact enforcing a law." *Id.* at 1226. On rehearing, the *Seymour* court suggested in dicta that any act within the scope of a law enforcement official's employment would be immune. *Seymour,* 428 N.E.2d at 204. Nine years later, in *Tittle,* our supreme court stated that "[w]e do not believe this [the dicta in *Seymour* ] reflects the legislature's intention." *Tittle,* at 800.

The *Tittle* court further explained that the dicta contained in *Seymour* was the basis for a number of cases decided by this court which expanded the law enforcement exception to such a degree that Judge Sullivan's statement in *McFarlin v. State* (1988), Ind.App., 524 N.E.2d 807, "to the effect that any action taken by a law enforcement official within the scope of his employment is immune [from suit]," appeared to be an accurate assessment of the state of the law. *Tittle,* at 800. The *Tittle* court then said: "We do not agree that this extension of the *Seymour* holding is warranted." *Id.*

The *Tittle* court then noted that the Act was in derogation of the common law and, thus, must be strictly construed. In addition, "when the legislature enacts a statute in derogation of the common law, this Court presumes that the legislature is aware of the common law, and does not intend to make any change therein beyond what it declares either in express terms or by *unmistakable implication." Id.* (citations omitted, emphasis added). The court noted that, in *Seymour,* it had concluded that the plain meaning of "enforcement of a law" included the actions of a police officer in hot pursuit of a criminal suspect. *Id.* at 801. The court refused to extend this to post arrest activities. *Id.*

In *City of Wakarusa, supra,* the supreme court addressed the question of whether the law enforcement exception applied to routine patrol activities of a deputy sheriff. The court, referring to *Tittle,* stated it had held that "the term 'enforcement of a law' was limited to activity attendant to effecting the arrest of one who may have broken the law...." *Wakarusa,* at 803. "Thus, unless the injuries for which a plaintiff seeks recovery arose out of the *actual attempts* to effect[4] an arrest of one who may have broken the law, there is no immunity to be found in Section 3(7)." *Id.* (emphasis added).

The supreme court repeated its interpretation of the law enforcement exception about three months later in *City of Valparaiso v. Edgecomb* (1992), Ind., 587 N.E.2d 96. In *Edgecomb,* a police officer was escorting a funeral procession. While following the orders of a superior officer to leapfrog to the head of the procession, he collided with Edgecomb's car, injuring Edgecomb. The trial court found that the officer was not entitled to immunity and this court reversed, concluding that because the officer's activity constituted performance of his duty, he was engaged in enforcing the law, and thus, was immune from suit. *Edgecomb, supra,* at 97 citing *City of Valparaiso v. Edgecomb* (1991), Ind.App., 569 N.E.2d 746, 747. The supreme court vacated our opinion and remanded the case to the trial court for further proceedings because the officer was not involved in making an arrest. *Edgecomb,* at 97 *citing Tittle, supra,* at 801.

---

**4.** "Effect, v. To do, to produce; to make, to bring to pass; to execute; enforce; accomplish." Black's Law Dictionary 605 (4 ed. 1968). *See e.g.,* To Effect a Robbery: "Any assault with intent to rob is an attempt to effect a robbery." *United States v. Spain* (1940), D.C.Ill., 32 F.Supp. 28, 30.

Here, Lackey volunteered to assist officers at the scene of—in the words of IPD—a domestic disturbance, a situation that her peers, the *Police Review Board,* considered to be *a non-emergency run.* While en-route, she was involved in the accident that is the subject of these suits. Lackey had to arrive at the scene before she could make an arrest, assuming *arguendo,* that she—instead of the officers already present—would even be making an arrest. She never arrived.[5] In attempting to respond to the scene to assist other officers, Lackey was engaged in the performance of her duties, just like the officer in *Edgecomb.* It is contrary to the holdings of our supreme court to state that the acts of being dispatched and then driving to, but not arriving at, a place where Lackey would possibly be capable of making an arrest is the same as "the *actual attempts* to effect an arrest of one who may have broken the law." Therefore, there is no immunity to be found in Section 3(7).

The majority fails to note that I.C. 34–4–16.5–3 lists seventeen (17) actions or conditions where immunity is granted. Only one of these involves emergency service personnel, the "law enforcement exception." There are many emergency situations involving life threatening situations where no immunity is granted to emergency personnel; e.g., firefighters responding to a fire in a building with people trapped, an ambulance dispatched to the scene of a cardiac arrest, fire/rescue personnel sent to the scene of a drowning or a chemical spill, etc. The legislature and our supreme court recognize that a police officer is unique among emergency personnel—he or she is armed with a deadly weapon and in certain situations, has the right and duty to use it. In a situation where the use of deadly force may be required, immunity is granted. In situations other than an arrest where an immediate or emergency response and/or a split second decision may be required, there is no immunity.

Although in my opinion our supreme court's language—i.e., "actual attempts to effect an arrest"—is clear, I agree with Judge Baker's implication that perhaps a more definitive statement would be helpful. For example, when an officer is in the actual process of making an arrest, i.e., face to face with a suspect (or in hot pursuit), that officer is: (1) making (or attempting to make) an arrest; (2) engaged in law enforcement activities; and (3) immune to suit under Section 3(7). Where that officer is merely doing his or her duty; e.g., patrolling the highways looking for expired license plates, issuing a parking ticket or a summons, obeying a superior's order while escorting a funeral procession, responding to a routine non-emergency radio dispatch, investigating an unleashed dog, directing traffic, or occupied with any

---

5. Judge Chezem's "slippery slope/floodgate" argument misses the point. First, of course, our supreme court addressed this kind of argument twenty years ago finding that "[i]t is unnecessary to sound the fire alarm until the fire has started." *Haas v. South Bend Comm. School Corp.* (1972), 259 Ind. 515, 289 N.E.2d 495, 500. Second, the argument is paralogistic. A police officer who fails to arrive at the scene of a possible crime because of carelessness, negligence, or recklessness, is less than worthless. He (or she) has been put on the street to "protect and serve" the public, not to place innocent members of the public in peril simply because the officer uses poor judgment. It is better for an officer to get to the scene thirty seconds later—than not get there at all. Contrast this to the officer, who while in the process of failing to arrive, injures third parties. An accident involving a police officer (*like Lackey's*) ties up more police officers—which of course, prevents them from enforcing the law—and requires the response of additional emergency vehicles, e.g., ambulances, fire/rescue, and cleanup equipment, thereby creating risks of additional accidents (all while the original suspect most likely goes on his merry way). It seems to me that personal accountability creates an incentive for police officers to use their heads and improve their judgment, which in turn improves law enforcement.

Third, Judge Chezem misunderstands the above comment—Nothing in this comment indicates that Lackey was or was not needed (that information is in the Record and was decided by her peers). What I am saying is that unless she arrives, she is/was worthless, to which Judge Chezem agrees: "[O]nce they [officers] are dispatched that it is necessary for them to arrive at the scene." *See* n. 2, Judge Chezem's opinion.

of the many other duties and services required of a police officer, there is no immunity under Section 3(7). In other words, it seems to me that when a suspect's arrest rights under the Fourth and/or Fifth Amendments attach—then immunity under Section 3(7) attaches to the officer.

In summary, I disagree with the majority. Driving seven and a half (7½) miles through a major metropolitan area at a very high rate of speed, without using any warning devices, to the scene of an anonymously reported squabble in the parking lot of a topless bar—a type of complaint that is considered to be a *non emergency* by the Indianapolis Police Department—is not the legal or factual equivalent of hot pursuit. Thus, Officer Lackey was not engaged in enforcing a law within the meaning of the Tort Claims Act. This case should be reversed.