**Tammy ROBINS, Appellant–Plaintiff,**

v.

**William HARRIS, as Sheriff of Vigo County, C. Joseph Anderson, James Diehl, Bill Decker, as Commissioners of Vigo County, Indiana, and Michael Soules, Appellees–Defendants.**

No. 84A01–0002–CV–57.

Court of Appeals of Indiana.

Dec. 15, 2000.

William G. Brown, Brown & Somheil Brazil, Indiana, Attorney for Appellant.

James S. Stephenson, Stephenson Daily Morow & Kurnik, Indianapolis, Indiana, Attorney for Appellees William Harris, C. Joseph Anderson, James Diehl and Bill Decker.

Edward Liptak, Bloomington, Indiana, Attorney for Appellee Michael Soules.

## OPINION

BAKER, Judge

Appellant-plaintiff Tammy Robins appeals the trial court's grant of summary judgment in favor of appellees-defendants, William Harris (as Sheriff of Vigo County), and C. Joseph Anderson, James Diehl, and Bill Decker (as Commissioners of Vigo County) on her sexual assault claim against them and a former corrections officer of the Vigo County Jail, Michael Soules. We consolidate and restate Robins's contentions to a single claim, that is, whether Sheriff Harris and the Commissioners may be liable for the intentional wrongs that Soules committed against Robins.

## FACTS [1]

On December 12, 1996, Sheriff Harris hired Soules as a jail officer of the Vigo County Jail. Twelve days after his hire, Soules was working third shift when he introduced himself to the inmates on the female cellblock. According to Robins's deposition, she and another inmate, Martha Custer, "flashed" him by lifting up their shirts and showing him their breasts. Record at 213. They also took off their clothes in front of a camera, so that Soules could watch over a monitor. R. at 214.

At one point during the evening, Soules told everybody to "lock down," meaning that all the inmates were to be locked into their cells. R. at 223. Soules was authorized to perform such a function in accordance with the jail manual provisions allowing a jailer to control inmate movement in security areas and control jail locking systems. R. at 173. Soules told the inmates that he would let them out in a few minutes. During this lock down, he summoned Custer out of her cell. She left her cell, and upon her return, Custer told Robins that Soules "wants you out there." R. at 216.

When Custer was locked down, Robins went into the cellblock area and waited for Soules. Soules grabbed Robins by the arm and brought her into the shower room. While in a shower stall, Robins performed fellatio on Soules.

Though Soules initially denied the allegations, two days later on December 26, 1996, he admitted them to Sheriff Harris and immediately resigned his position. After a state police investigation, Soules was charged with both sexual misconduct by a service provider, in violation of IND. CODE § 35–44–1–5,[2] and official misconduct, in violation of IND.CODE § 35–44–1–2.[3]

---

1. Oral argument was heard in this cause on November 1, 2000, in Indianapolis.

2. I.C. § 35–44–1–5 provides:
   (a) As used in this section, "service provider" means a public servant or other person employed by a governmental entity or another person who provides goods or services to a person who is subject to lawful detention.
   (b) A service provider who knowingly or intentionally engages in sexual intercourse or deviate sexual conduct with a person who is subject to lawful detention commits sexual misconduct, a Class D felony.
   (c) It is not a defense that an act described in subsection (b) was consensual.
   (d) This section does not apply to sexual intercourse or deviate sexual conduct between spouses.

3. I.C. § 35–44–1–2 provides in part:
   A public servant who:
   (1) knowingly or intentionally performs an act that he is forbidden by law to perform;
   . . . .

Soules pled guilty to the official misconduct charge, as a class A misdemeanor, in exchange for the dismissal of the charge for sexual misconduct by a service provider, which is punishable as a class D felony.

On December 16, 1997, Robins initiated suit against Sheriff Harris, the Commissioners, and Soules, alleging that they were liable for injuries she suffered by Soules's act. Sheriff Harris and the Commissioners later filed a motion for summary judgment, asserting that they were entitled to a judgment as a matter of law because they were not responsible for Soules's acts and did not breach any duty owed to Robins. R. at 72. On June 23, 1999, the trial court conducted a summary judgment hearing. Pursuant to Ind. Trial Rules 54(B)[4] and 56(C), the trial court granted summary judgment to Sheriff Harris and the Commissioners. Robins now appeals.

### ISSUES AND ARGUMENTS

#### I. Standard of Review

When reviewing a grant of summary judgment, this court applies a well-settled standard of review. A trial court properly grants summary judgment when the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R. 56(C). The moving party bears the burden of specifically designating materials that make a *prima facie* showing that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *Interstate Cold Storage, Inc. v. GMC*, 720 N.E.2d 727, 729 (Ind.Ct.App.1999), *trans. denied*. Once the movant meets these two requirements, the burden shifts to the non-

movant to set forth specifically designated facts showing a genuine issue for trial. *Id.* The nonmovant shows a genuine issue of fact "where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Id.* at 730.

Our task on review of a summary judgment ruling is the same as the trial court's. Considering only those materials designated to the trial court and construing such material in a light most favorable to the nonmovant, we determine whether there is a genuine issue of material fact for trial. *Interstate Cold Storage*, 720 N.E.2d at 730. The losing party at the trial court has the burden to persuade us that the court below erred. *Id.* However, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Jones v. Western Reserve Group*, 699 N.E.2d 711, 715 (Ind.Ct.App. 1998), *trans. denied*.

#### II. Liability of Sheriff

The facts of the instant case present us with the opportunity to articulate more clearly the responsibility a sheriff bears for the intentional wrongful acts of his employees committed against inmates.

We draw on *Stropes v. Heritage House Childrens Center of Shelbyville, Inc.*, where our supreme court announced that Heritage House Childrens Center owed a nondelegable duty of care to its residents. 547 N.E.2d 244, 254 (1989). *Stropes* involved an employee's sexual assault against a fourteen-year-old boy suffering from cerebral palsy and severe mental disabilities. As a result of his disabilities, Stropes "had the mental capacity of a five-month-old infant and was without the ver-

---

commits official misconduct, a Class A misdemeanor.

4. T.R. 54(B) provides in part:
When more than one [1] claim for relief is presented in an action ... when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for entry of final judgment.

bal and motor skills necessary to perform or assist in even the simplest tasks associated with his own sustenance or sanitation." *Id.* at 245. Our supreme court based Heritage House's liability for the sexual assault on Stropes's "lack of autonomy and his dependence on Heritage for care" and "the degree of Heritage's control over" Stropes. *Id.* at 254.

We are presented with strikingly similar circumstances. As a pre-trial detainee of the Vigo County Jail, Robins has almost no autonomy and is completely dependent on the correctional facility for care. Moreover, the sheriff and his employees maintain extraordinary control over the minutest details of their prisoners' lives. According to the correctional facility's manual, a jailer:

12. Conducts shake-down inspections as needed;

13. Supervises the feeding of inmates;

14. Supervises the cleaning of inmate living quarters . . . ;

15. Provides and ensures that inmates practice good hygiene;

16. Supervises scheduled inmate activities and programs;

17. Supervise[s] inmate visits;

18. Supervises the taking of medication by inmates . . . ;

19. Searches all inmates coming to and leaving the jail;

. . . .

27. Controls all inmate movement within security areas of the jail;

R. at 172–73. As a result of an inmate's substantial dependency and the extraordinary control jailers wield over their prisoners, we hold that inmates are not precluded from recovering damages from a sheriff for injuries suffered by intentional wrongful acts of jail employees. Therefore, as a matter of law, liability attaches to Sheriff Harris on account of the wrongful acts committed by Soules against Robins.

5. In *Tittle,* our supreme court limited law enforcement immunity to "activities attendant

We also note that consent is not available as a defense to Robins's sexual assault claim. Under I.C. § 35–44–1–5(b), a service provider may not claim consent as a defense for sexual misconduct with a detainee. Given Robins's general lack of autonomy as an inmate, it would be incongruous to withhold the defense of consent in the criminal context but to allow Soules the defense in a civil claim. Because consent is not at issue, no genuine issue of material fact is left for the trial court to decide regarding the assault on Robins.

### III. Inapplicability of the Tort Claims Act

Sheriff Harris and the Commissioners urge that the Tort Claims Act immunizes the sheriff for the intentional wrongs committed by his jailer Soules.

In general, governmental entities and their employees are subject to liability for torts committed by them, unless the activity giving rise to the tort falls within the enumerated exceptions in the Tort Claims Act. One exception to the Torts Claim Act, I.C. § 34–4–16.5–3 (current version at I.C. § 34–13–3–3), provides:

A governmental entity or employee acting within the scope of the employee's employment is not liable if a loss results from:

. . . .

(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

Robins, on the contrary, relies on *Tittle v. Mahan* to support her claim for liability to attach to Sheriff Harris and the Commissioners. 582 N.E.2d 796 (Ind. 1991), *overruled in part by Quakenbush v. Lackey,* 622 N.E.2d 1284, 1285, 1286–87 (Ind.1993) ("[W]e abandon the *dicta* of our earlier decision in *Tittle v. Mahan* . . . .").[5]

to effecting the arrest of those who may have broken the law." 582 N.E.2d at 801. Two

In *Tittle,* our supreme court concluded that the term " 'enforcement of law' did not include activities associated with the administration of pre-trial detainees at a county jail." 582 N.E.2d at 801. More specifically, a sheriff's compliance with obligations established by statute and case law, regarding operation of jails and the maintenance of prisoners, did not constitute "enforcement of law." *Id.* Rather, such acts were "administrative and custodial in nature," and as such could not fall within the immunity protection of the Act. *Id.* Therefore, activities involving the administration of pre-trial detainees, such as Robins, are not immunized under the Tort Claims Act.

### IV. Liability of the Commissioners

█ Finally, Robins claims that the Commissioners are liable for Robins's alleged injury because of "a defect in the physical plant" of the Vigo County Jail. Appellant's brief at 36. Robins alleges that the jail should "have been constructed, equipped and maintained as to prevent the injury to Robins by the intentional misconduct of a male jailer against a female prisoner." Appellant's brief at 37. Robins supports her claim by relying on IND. Code § 36–2–2–24(a), which provides, in part: "The executive shall establish and maintain a ... county jail...."

█ Sheriff Harris and the Commissioners assert that the Commissioners are not liable for the injuries sustained by jail prisoners. Rather, the Commissioners contend that they are only required to "keep the jail open for use and in good repair." *See Donahue v. St. Joseph County ex rel. Bd. of Com'rs,* 720 N.E.2d 1236, 1240 (Ind.Ct.App.1999). Once the Commissioners establish and reasonably maintain a jail, they are not responsible for administering the manner of an inmate's incarceration. *Id.* The law is well-settled that county commissioners do not have control over the acts of a sheriff. *See*

*Weatherholt v. Spencer County,* 639 N.E.2d 354, 357 (Ind.Ct.App.1994) ("We conclude that Weatherholt's claim actually concerns the manner in which the county jail was administered, a matter which we have determined falls solely within the province of the sheriff."); *Delk v. Bd. of Com'rs,* 503 N.E.2d 436, 440 (Ind.Ct.App. 1987) ("Although county commissioners have limited emergency powers relating to the appointment of extra deputies, those powers do not relate to the acts performed by ... the sheriff."). Because the Commissioners lack control over Sheriff Harris, they are not subject to liability for Robins's alleged injury.

### CONCLUSION

In sum, we hold that Sheriff Harris is liable for the assault committed by Soules against Robins and that the Commissioners are not liable for Robins's alleged injuries. Therefore, we reverse the summary judgment in favor of Sheriff Harris and direct the entry of partial summary judgment in favor of Robins. There remains for trial the extent of Robins's injuries, if any, and the resultant damages.

Judgment reversed and remanded.

VAIDIK, J., concurs.

SHARPNACK, C.J., concurs and dissents with opinion.

SHARPNACK, C.J., concurring in part and dissenting in part.

I concur with the majority opinion's resolution of all issues but one. The issue on which I disagree is whether, having established that Sheriff Harris owed a nondelegable duty of care to Robins, the sheriff may raise consent as a defense to Robins' claim.

The statute cited by the majority, Ind. Code § 35–44–1–5, is a criminal statute, and it enforces the public policy to prevent

---

years later, in *Quakenbush,* our supreme court abandoned this dictum, because it "produced an unworkable rule of law," but left the essential holding intact. 622 N.E.2d at 1287.

guards from engaging in sexual activities with prisoners. The statute punishes such activities even if the prisoner consents to the activity. *See* Ind.Code § 35–44–1–5. However, the reasons supporting a criminal statute do not necessarily apply to civil litigation. *See, e.g., State v. Kokomo Tube Co.*, 426 N.E.2d 1338, 1346 (Ind.Ct.App. 1981) (determining that a civil, not criminal, probable cause standard should apply when determining whether safety inspectors are entitled to enter and inspect businesses). There would seem to be little public interest in permitting a prisoner to recover money damages for activities the prisoner willfully engaged in. In fact, permitting such a recovery might tend to encourage the conduct that society wants to stop.

In this case, Robins is essentially raising a battery claim against Soules and, by extension, Sheriff Harris. In Indiana, "[i]mplied or express consent is a defense" to a claim of battery. 23 James R. Fisher & Debra H. Miller, Indiana Practice: Personal Injury Law and Practice § 3.18 (1997). Consent is also a defense to a civil claim of assault and battery in numerous other jurisdictions. *See, e.g., Harris v. Leader*, 231 Ga.App. 709, 499 S.E.2d 374, 377 (1998) (affirming a grant of directed verdict against a patient who sued her psychiatrist for battery because the evidence showed that she consented to their hugging and holding hands), *recons. denied, cert. denied; Janelsins v. Button*, 102 Md.App. 30, 648 A.2d 1039, 1042 (Md. 1994) (noting that "a plaintiff's consent may be a complete defense in a battery action"); *Andrepont v. Naquin*, 345 So.2d 1216, 1220 (La.Ct.App.1977) (providing that "[t]he defense of consent in Louisiana operates as a bar to recovery for the intentional infliction of harmful or offensive touchings of the victim"); *Prell Hotel Corp. v. Antonacci*, 86 Nev. 390, 469 P.2d 399, 401 (1970) (noting that "[c]onsent negates the existence of the tort [of assault and battery] and, therefore, denies liability."); *Hellriegel v. Tholl*, 69 Wash.2d 97, 417 P.2d 362, 366 (1966) (providing that

"[i]t is agreed by all parties to the suit that consent is a defense to battery,...."). If it is shown that Robins consented to Soules' touching, then there would be no tort, and there would be no reason to allow her to recover against Sheriff Harris. The application of Ind.Code § 35–44–1–5 in this context could undermine tort principles by compensating Robins for a tort that did not occur. An issue exists as to whether Robins willingly engaged in sexual activity with Soules. Consequently, I dissent from the majority's opinion on this issue, and would remand for trial on the issues of liability and damages.