

FILED

Sep 22 2017, 7:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT
JENNIFER COX

John P. Young
James H. Young
Young & Young
Indianapolis, Indiana

ATTORNEYS FOR APPELLANT/
CROSS-APPELLEE BABI E. BEYER

Edward E. Beck
John S. Bloom
Shambaugh, Kast, Beck & Williams, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES
EVANSVILLE POLICE
DEPARTMENT AND THE CITY
OF EVANSVILLE

Keith W. Vonderahe
Robert L. Burkart
Ziemer Stayman Weitzel &
Shoulders
Evansville, Indiana

ATTORNEY FOR APPELLEE/
CROSS-APPELLANT THE CITY
OF FORT WAYNE

Carolyn M. Trier
Trier Law Office
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jennifer Cox, | September 22, 2017 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 82A01-1610-CT-2299 |
| v. | Appeal from the Vanderburgh Circuit Court |
| Evansville Police Department and The City of Evansville, | The Honorable David D. Kiely, Judge |
| *Appellees-Defendants* | Trial Court Cause No. 82C01-1209-CT-479 |

| | |
|---|---|
| Babi E. Beyer, *Appellant-Plaintiff/Cross-Appellee,* <br> v. <br> The City of Fort Wayne, *Appellee-Defendant/Cross-Appellant* | Court of Appeals Case No. 82A01-1610-CT-2299 <br><br> Interlocutory Appeal from the Allen Superior Court <br><br> The Honorable Nancy Eshcoff Boyer, Judge <br><br> Trial Court Cause No. 02D01-1506-CT-247 |

**Baker, Judge.**

Two women were sexually assaulted by police officers while those officers were on duty and engaged in certain activities authorized by their employers. The two women filed lawsuits against their respective municipalities, raising claims of vicarious liability for the officers' negligence by virtue of respondeat superior. Normally, a respondeat superior claim requires a showing that the employee was acting in the scope of employment when committing the alleged tort. There is an exception to that rule, however, when, under certain circumstances, the employer has assumed a non-delegable duty of care to the victim. Both women argue that this exception applies to their respective cases; both trial courts granted summary judgment in favor of the municipalities on this issue. Both women appeal these rulings.

With respect to Jennifer Cox, we reverse and remand for further proceedings. With respect to Babi Beyer, we reverse the trial court's ruling and remand for

further proceedings.  Additionally, the City of Fort Wayne cross-appeals the trial court's denial of Fort Wayne's summary judgment motion on Beyer's respondeat superior claim.  We affirm that portion of the trial court's order.

# Facts

[3] The two cases included in this appeal are wholly unrelated.  They have different parties and different facts and stem from different parts of the state.  They have been consolidated on appeal, however, because they share a common issue of law.

### Cox v. Evansville

[4] On March 1, 2009, Cox was with her girlfriend, Debbie Jackson, at Jackson's house in Evansville.  Cox and Jackson began drinking and arguing, and shortly after 4:00 a.m., Jackson called the Evansville Police Department (EPD).  EPD protocol requires that two officers respond to a domestic violence call, though occasionally one officer will call back to dispatch and tell the other officer not to proceed if the first officer has arrived at the scene and determines that he can handle it alone.

[5] After Jackson called EPD, Officer Martin Montgomery and Officer Kathy Winters were dispatched to the scene.  Before Officer Montgomery arrived at the scene, he called off Officer Winters and proceeded to the scene alone.  At 4:12 a.m., Officer Montgomery arrived at Jackson's home.  Jackson gave the officer Cox's car keys, and Officer Montgomery instructed Cox to get into his marked patrol vehicle.  She complied, and he drove her home.

[6] Officer Montgomery and Cox arrived at her apartment around 4:26 a.m., and at 4:28 a.m., he radioed EPD dispatch that he had "cleared" the run and was available for another dispatch run. He then followed Cox into her apartment and closed the door. Officer Montgomery took off his gun belt and coerced Cox to perform sexual acts on him, including oral, vaginal, and anal sex. Afterwards, he put his gun belt back on and left the apartment. Officer Montgomery was eventually found guilty of criminal deviate conduct and received a twelve-year sentence.

[7] Originally, Cox filed a complaint in federal district court that included a state law negligence claim. On June 18, 2012, that complaint was dismissed without prejudice to Cox's right to refile the state law negligence claim in state court. On September 12, 2012, Cox filed a complaint against EPD and the City of Evansville (Evansville). In relevant part, the complaint raises a negligence claim, alleging that Officer Montgomery assaulted her in the course and scope of his employment for Evansville and that Evansville and EPD are liable to Cox. Cox provided three theories of liability: (1) respondeat superior; (2) non-delegable duty exception to respondeat superior; and (3) negligence in Officer Montgomery's hiring, retention, and supervision. Cox eventually withdrew the third theory of liability.

[8] On May 7, 2015, EPD filed a motion to strike Cox's theory of liability based on the non-delegable duty exception to respondeat superior. On May 15, 2015,

Evansville and EPD filed a motion for summary judgment.[1] On September 1, 2015, Cox filed a motion for partial summary judgment. Following a hearing on all pending motions, on August 4, 2016, the trial court granted Evansville and EPD's motion to strike and partially granted their motion for summary judgment with respect to the theory of liability based on the non-delegable duty, or "common carrier,"[2] exception. In relevant part, the trial court found as follows:

> [T]he common carrier exception to the doctrine of respondeat superior has no application to the facts of this case. The EPD had no duty to Plaintiff once Officer Montgomery "cleared the run," Plaintiff exited the police vehicle and Plaintiff entered her apartment.

Cox Appealed Order p. 1. The trial court denied Cox's motion for partial summary judgment. Cox now brings this interlocutory appeal of the trial court's ruling that the non-delegable duty exception does not apply to this case.

### Beyer v. Fort Wayne

[9] On September 1, 2013, at approximately 1:42 a.m., several Fort Wayne Police officers were dispatched to Lima Road. When they arrived at the location, they observed Beyer, who initially appeared to be asleep, in a vehicle that was

---

[1] Evansville and EPD had filed an earlier summary judgment motion on December 20, 2012, but the trial court denied that motion and denied their request to certify the ruling for interlocutory appeal.

[2] As will be fully explained below, historically, this exception to the respondeat superior doctrine applied only to common carriers; it has since been expanded to other types of entities. Occasionally, practitioners and courts still refer to it as the "common carrier" doctrine, as did the trial court in Cox's case.

stopped in the southbound lane of the road. Upon further observation, the officers determined that she was intoxicated. They removed her from her vehicle and placed her in the custody of Officer Mark Rogers, who put handcuffs on her and escorted her to the back seat of his police vehicle.

[10] Officer Rogers drove Beyer to the Allen County Lockup. When they arrived, she began vomiting, and Officer Rogers decided to take her to the hospital. She was admitted to the emergency room, where hospital employees drew blood. At 3:31 a.m., the blood draw results showed a blood alcohol level of .2555. The hospital would not have released Beyer in her condition had she not been in the custody of the police, but it did so around 4:20 a.m. because she was in custody and could be watched by police. Hospital employees informed Officer Rogers that Beyer needed to be observed for six hours and should sleep on a mattress on the floor.

[11] Officer Rogers again placed Beyer in the backseat of his vehicle outside the hospital. As the officer was starting the vehicle, Beyer complained that the handcuffs were painful, at which time he got out of the car, opened her door, and, while she was still handcuffed, fondled her breasts and then loosened her handcuffs. Officer Rogers got back into the car and commented on Beyer's attractiveness.

[12] Because of her level of intoxication, Beyer slipped in and out of consciousness, but recalls that after driving around for some period of time and making several stops, Officer Rogers stopped the vehicle in an area unknown to her. He

grabbed Beyer by the arm and pulled her from the vehicle, walking her barefoot through a grassy area with twigs and stones, and directing her to a bench. Officer Rogers again sexually molested her and proceeded to have sexual intercourse with her. He was armed and in full uniform during the assault. Afterwards, Officer Rogers drove her to a parking lot, where he removed her from his vehicle and placed her in a police crime scene van. He then drove her home in the van. At 5:29 a.m., Officer Rogers reported that he had completed the run. On August 28, 2014, Officer Rogers pleaded guilty to three felonies: sexual misconduct, official misconduct, and rape.

[13]     On June 24, 2015, Beyer filed a complaint against Officer Rogers and the City of Fort Wayne (Fort Wayne), alleging liability against Fort Wayne based on two theories: respondeat superior and the non-delegable duty exception.[3] On January 14, 2016, Fort Wayne filed a motion for summary judgment. On August 23, 2016, the trial court partially granted the motion for summary judgment with respect to the theory of the non-delegable duty exception and otherwise denied it. In relevant part, the trial court held as follows:

> A. Vicarious Liability Under the Doctrine of Respondeat Superior
>
> ***

---

[3] Beyer also included a theory of negligent hiring, training, and supervision, but did not oppose Fort Wayne's summary judgment motion on this theory and does not appeal the trial court's summary judgment motion on this matter.

Here it is undisputed that some of Rogers' acts were within the scope of his employment, i.e., taking Beyer into custody, handcuffing her, transporting her to lockup for a breath test, transporting her to St. Joseph Hospital for a blood draw, and then transporting her back to lockup. Therefore, some of Rogers' acts were authorized by Fort Wayne. . . .

. . . [H]ere, it is clear that Rogers' position as the OWI police officer gave him the means and control over individuals who were intoxicated. . . .

***

Some of Rogers' actions were at least initially authorized. Whether his actions were within the scope of employment is a genuine issue of material fact to be determined by the Jury.

***

B. [Non-Delegable Duty Exception]

Indiana recognizes the common carrier exception to the Doctrine of Respondeat Superior. . . . Liability is imposed because of the employer's assumption of responsibility for its passengers' safety. Under the non-delegable duty exception, the employer can be held liable for any violation by its employee of the employer's non-delegable duty to protect the individual, regardless of whether the act was within the scope of employment.

***

. . . Fort Wayne argues . . . that the non-delegable duty exception is a narrow one. Application to a police department would result in the strict liability of a municipality for its officers' acts.

There are no Indiana cases which have extended the common carrier exception to police officers.

The Court finds no genuine issues of material fact; and, as a matter of law, enters judgment for Fort Wayne and against Beyer on the issue of liability under the theory of non-delegable duty. . . .

[14]    Beyer Appealed Order p. 4-9.  Beyer now brings this interlocutory appeal with respect to the theory of the common carrier exception, and Fort Wayne cross-appeals with respect to the theory of respondeat superior.

## Discussion and Decision

[15]    All issues before us in this appeal arise from the trial courts' summary judgment orders.  Our standard of review on summary judgment is well established:

We review summary judgment de novo, applying the same standard as the trial court:  "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp,* 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)).  "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences."  *Id.* (internal citations omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014).

# I. Non-Delegable Duty

Cox and Beyer both argue that the trial courts in their respective cases erroneously granted summary judgment in favor of Evansville and Fort Wayne, respectively, on the issue of assumption of a non-delegable duty.

## A. Basic Principles

The doctrine of respondeat superior "imposes liability, where none would otherwise exist, on an employer for the wrongful acts of his employee which are committed within the scope of employment." *Stropes v. Heritage House Children's Center of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989). Under certain circumstances, however, there is an exception to the requirement that the employee's actions must have been committed within the scope of employment: "where an employer has assumed a non-delegable duty to protect a person and his employee inflicts injury on that person, the doctrine of respondeat superior will not interdict the imposition of liability on the employer even if the wrongful act was outside the scope of employment." *Id.* at 251.

Historically, this exception was applied to common carriers, and is often referred to as the "common carrier exception." *Id.* A "common carrier" is "[a] carrier[, such as a railroad or an airline,] that is required by law to transport passengers or freight, without refusal, if the approved fare or charge is paid." *Black's Law Dictionary* 205 (7th ed.). Our Supreme Court has observed that "Indiana has identified the principles underlying its adoption of the exception, and, in fact, has extended it to reach enterprises other than common carriers."

*Stropes*, 547 N.E.2d at 252 (noting that it has been extended to theater managers, innkeepers, and merchants).

[19]     The *Stropes* Court explained the doctrine as follows:

> The imposition of liability under the common carrier exception is *premised on the control and autonomy surrendered by the passenger to the carrier for the period of accommodation.* This Court in *Dickson* stated that an enterprise which has induced an individual to give over the control of his personal comfort and safety to its care assumes a special duty to protect him from injury, particularly from its own employees. [*Dickson v. Waldron*, 135 Ind. 507, 34 N.E. 506 (Ind. 1893).] . . . .
>
> Under respondeat superior, employer liability is coextensive with the powers and advantages engendered by the employment relationship. Because liability is predicated conceptually on the employer's ability to command or control his employee's acts, an employer can be held responsible only for those acts of his employee which are committed within the scope of their employment relationship. *Under the common carrier exception to respondeat superior, however, the range of employee activities deemed to be under the employer's dominion is irrelevant. Liability is predicated on the passenger's surrender and the carrier's assumption of the responsibility for the passenger's safety, the ability to control his environment, and his personal autonomy in terms of protecting himself from harm; therefore, the employer can be held responsible for any violation by its employee of the carrier's non-delegable duty to protect the passenger, regardless of whether the act is within the scope of employment.*

*Id.* at 252-53 (emphases added) (internal footnotes and citations omitted).

Unlike other jurisdictions, "Indiana's common carrier exception . . . is premised on the ceding of power to ensure one's safety and protection from an individual

which purports to provide it, and the exception, again by contrast [with other jurisdictions], has been applied to enterprises other than common carriers." *Id.* at 253.

## B.  Caselaw

## 1.  Exception Extended

### a.  *Stropes*

[20]    In *Stropes*, a child resident of a residential children's center sued the center for damages after he was sexually assaulted by a nurse's aide employed by the center.  *Id.* at 246.  In relevant part, the resident claimed that the center was liable whether or not the nurse's aide was acting within the scope of his employment under a theory of a non-delegable duty.

[21]    After going through the analysis summarized above, our Supreme Court turned to whether the common carrier exception should be extended to the situation before it in *Stropes*:

> This Court has stated that "[t]he duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation gives rise to such duty." *Miller v. Griesel* (1974), 261 Ind. 604, 611, 308 N.E.2d 701, 706.  The resolution of this legal question, however, cannot be reached by a mechanical categorization.  An examination of the relevant relationship here against the template of the common carrier exception and the rationales underlying it reveals that Heritage clearly assumed a non-delegable duty to be responsible for the care and safety of David Stropes.  When Heritage accepted

David as a resident of its facility, it was fully cognizant of the disabilities and infirmities he suffered which rendered him unable to care for himself and which, in fact, undoubtedly formed the basis of their relationship. Their "contract of passage" contemplated that the entire responsibility for David's comfort, safety and maintenance would be on Heritage and that the performance of these tasks would be delegated to its employees. Given the degree of David's lack of autonomy and his dependence on Heritage for care and the degree of Heritage's control over David and the circumstances in which he found himself, we find that Heritage assumed a non-delegable duty to provide protection and care so as to fall within the common carrier exception. The standard of care which Heritage owed to David, therefore, was that actual care be used by Heritage and its employees to provide that protection. The trial court was in error to summarily reject his claim that such a duty existed.

*Id.* at 253-54. Our Supreme Court further explained that "[w]hen analyzing the common carrier exception, the significant relationship is that of the carrier and its passenger, and the imposition of liability is premised on the control that is surrendered to the one by the other." *Id.* at 254.

[22] The *Stropes* Court found, as a matter of law, that the center had a non-delegable duty to the resident, regardless of whether the nurse's aide acted in the course and scope of his employment. *Id.* It then remanded the matter to the trial court for consideration of the remaining elements of the negligence claim—breach, causation, and damages. *Id.*

## b. *Robins*

[23] In *Robins v. Harris*, this Court considered another possible application of the non-delegable duty doctrine. 740 N.E.2d 914 (Ind. Ct. App. 2000), *summarily aff'd in relevant part by Robins v. Harris*, 769 N.E.2d 586 (Ind. 2002). In that case, Robins was an inmate on the female cellblock of the Vigo County Jail. A jail officer locked down the facility and then grabbed Robins by the arm, brought her into a shower room, and had her perform fellatio on him. Robins filed a lawsuit against the sheriff, arguing that the sheriff was liable for the jail officer's actions whether or not the jail officer was acting in the course and scope of his employment.

[24] This Court found *Robins* to be strikingly similar to *Stropes*: "As a pre-trial detainee of the Vigo County Jail, Robins has almost no autonomy and is completely dependent on the correctional facility for care. Moreover, the sheriff and his employees maintain extraordinary control over the minutest details of their prisoners' lives." 740 N.E.2d at 918. Because of the inmates' "substantial dependency [on their jailers] and the extraordinary control jailers wield over their prisoners, we hold that inmates are not precluded from recovering damages from a sheriff for injuries suffered by intentional wrongful acts of jail employees." *Id.*

## c. *Interim Healthcare*

[25] In this case, a developmentally disabled child with cerebral palsy received services from a home health aide employed by Interim Healthcare. *Interim*

*Healthcare of Fort Wayne, Inc. v. Moyer*, 746 N.E.2d 429 (Ind. Ct. App. 2001). Although the home health aide was neither expected nor authorized to administer medication to the child, he administered a large injection of insulin (which the child did not take, but the home health aide did), causing the child to have a seizure. The child's parents sued Interim Healthcare, arguing that it was liable for the aide's actions under a theory of non-delegable duty of care.

[26]     On appeal, Interim Healthcare sought to distinguish *Stropes*, arguing that "it 'never contracted for, nor agreed to assume, the entire responsibility for [the child's] comfort and safety.' Rather, 'Interim's role in providing home health aides was merely to assist [the child] with personal care activities.'" *Id.* at 434. This Court was not persuaded:

> Nevertheless, given the severity of [the child's] disabilities and infirmities (which undoubtedly formed the basis of the [the family's] relationship with Interim), the degree of [the child's] dependence on [the aide] for her care, and the degree of [the aide's] control over [the child] while in the [family's] home, we conclude that Interim assumed a non-delegable duty to provide for [the child's] care and safety. We are unpersuaded by Interim's argument that Interim was not responsible for [the child's] around-the-clock care or medication and that [the child's mother] remained upstairs during [the aide's] visits. [The child] was unable to provide for even her most basic needs or protect herself from harm and was thus entirely dependent on Interim's employees for her care and safety. The trial court properly denied Interim's motion for summary judgment on this issue.

*Id.* at 434-35.

# 2. Exception Not Extended

[27] The above cases are examples of situations in which Indiana courts have extended the common carrier exception to employers that are not common carriers. Next, however, we explore two cases in which courts declined to extend the doctrine.

## a. *Hansen*

[28] In *Hansen v. Board of Trustees of Hamilton Southeastern School Corporation*, a teacher and assistant band director of an Indiana public high school engaged in an improper sexual relationship with a student. 551 F.3d 599 (7th Cir. 2008). The student's parents brought multiple claims against the school corporation, including, in relevant part, a state law claim for negligence premised on a theory of a non-delegable duty. *Id.* at 615. The Seventh Circuit concluded that the trial court properly granted summary judgment in favor of the school corporation on this claim:

> Indiana courts, however, have consistently refused to impose a non-delegable duty upon a school for the safe-keeping of its students, recognizing that schools "are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them." *Miller v. Griesel,* 261 Ind. 604, 308 N.E.2d 701, 706 (1974); *see also Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.,* 756 N.E.2d 970, 974 (Ind. 2001). Rather, schools and school personnel have a duty "to exercise ordinary and reasonable care for the safety of the children under their authority." *Miller,* 308 N.E.2d at 706 . . . . The Indiana Supreme Court stated that an "approach that focuses on rearticulating that duty based upon a given set of facts is

misplaced in our view because to do so presupposes that an issue which is thought to be settled must be revisited each time a party frames the duty issue a little differently." *Mangold,* 756 N.E.2d at 974. Consequently, we find that well-settled Indiana law does not impose a non-delegable duty on [the school corporation] for the safekeeping of its students, and the school district is not liable for [the teacher's] misconduct under such a duty.

*Id.* The Seventh Circuit did not include *Stropes*, *Robins*, or *Interim Healthcare* in its analysis of the issue.

# b. *L.N.K.*

[29] In this case, sixteen-year-old L.N.K. entered a mental health and addiction treatment center on an inpatient basis. *L.N.K. v. St. Mary's Med. Ctr.*, 785 N.E.2d 303 (Ind. Ct. App. 2003). While L.N.K. resided at the center, a center employee kissed and hugged her on several occasions. After L.N.K. was discharged from the center, the same employee took her on a date and engaged in sexual intercourse with her. When L.N.K. returned to the center for outpatient appointments, the employee frequently kissed her and would leave with her after his shift was done. Three months after leaving the inpatient program, L.N.K. became pregnant by the employee. L.N.K. and her parents filed a complaint against the center, arguing, in relevant part, that the center was liable by virtue of a non-delegable duty.

[30] This Court considered both *Stropes* and *Robins*, but ultimately found both cases to be distinguishable:

Here, the Center did not have the degree of control over L.N.K. that is required for the heightened duty of a common carrier to apply at the time the tort of seduction was completed. No acts of sexual intercourse occurred until L.N.K. was an outpatient, though undoubtedly enticement or persuasion may have been occurring while she was an inpatient. Appellees' App. p. 41. Both in *Stropes* and *Robins,* the torts complained of began and ended while the plaintiffs were completely dependent on the defendant's employees. Once L.N.K. became a Center outpatient, the rationale underlying *Stropes* and *Robins*—lack of autonomy and dependence upon the defendant—disappeared. Once she was an outpatient, L.N.K. was no longer under the Center's control.

*Id.* at 308. This Court, therefore, agreed with the trial court that the center was not vicariously liable for the employee's actions as a matter of law and was entitled to summary judgment on that claim. *Id.*

## 3. Distillation of Rules

Based on all of the above caselaw, we can sum up Indiana's rules regarding the non-delegable duty exception to respondeat superior as follows. First, an entity assumes a non-delegable duty of care to its patrons[4] when the patrons must surrender their control and autonomy to the entity while they are in its care. *Stropes*, 547 N.E.2d at 252-53. Second, the determination of whether those patrons have surrendered their control and autonomy to the entity is based

---

[4] We use the general label of "patrons" for the sake of simplicity, but note that entities could assume this non-delegable duty to any number of groups, including (but not limited to) customers, clients, dependents, or consumers.

upon a number of factors, including the entity's assumption of the responsibility for their safety, the patrons' ability to control their environment, and the patrons' ability to protect themselves from harm. *Id.* at 252-54. Third, the focus of this analysis is the nature of the relationship between the entity and the patron at the time the tort was allegedly committed. *Id.* at 254; *Robins*, 740 N.E.2d at 918; *Interim Healthcare*, 746 N.E.2d at 434-35; *L.N.K.*, 785 N.E.2d at 308. Fourth, the question of whether a non-delegable duty exists is a matter of law. *Stropes*, 547 N.E.2d at 254; *Robins*, 740 N.E.2d at 918; *L.N.K*, 785 N.E.2d at 308.

# C.  Cox

[32]  Turning first to the case involving Cox, EPD, and Evansville, we summarize the operative facts of the incident as follows:

- The night of March 1, 2009, Cox was at her girlfriend's house and they had been drinking for much of the night. After Cox and her girlfriend began arguing, her girlfriend called the police.
- Officer Montgomery responded, and Cox's girlfriend gave him Cox's car keys. Officer Montgomery was in full police uniform and driving a marked police vehicle.
- Officer Montgomery told Cox to get in the front seat of his police vehicle and he then drove her home.
- When they reached her apartment complex, Cox got out of the car. Officer Montgomery also got out of the car and followed Cox up the stairs to her apartment. Before exiting the vehicle, Officer Montgomery radioed dispatch to "clear" the run, indicating that he was ready for another dispatch run.
- Cox did not invite him in, but Officer Montgomery "came in right after [she] unlocked the door, he walked right in behind [her]." Cox Appellant's App. at 28.

- Cox did not try to stop him or ask him why he was doing that because she "thought at the time he was just being an Officer, making sure [she] got in alright knowing [she] was drinking that night . . . ." *Id.*
- Cox "thought he was getting ready to leave, but he didn't." *Id.* Officer Montgomery then closed the door and proceeded to sexually assault Cox.

The trial court found that as soon as Officer Montgomery radioed to dispatch to clear the run and walked Cox to her door, any assumed duty ceased to exist. Additionally, Evansville and EPD contend that imposing a non-delegable duty of care on law enforcement would essentially mean an imposition of strict liability on municipalities for all the actions of their law enforcement employees.[5]

[33] Turning first to the latter issue, we note that this Court has already found that under certain circumstances, law enforcement entities may assume a non-delegable duty of care. *Robins*, 740 N.E.2d at 918; *L.N.K.*, 308 N.E.2d at 308 (citing and analyzing *Robins*). Furthermore, we disagree that imposing a non-delegable duty on law enforcement under certain circumstances amounts to an imposition of strict liability. Strict liability is a basis for a cause of action that creates liability regardless of fault. *E.g.*, *Cornette v. Searjeant Metal Prods., Inc.*, 147 Ind. App. 46, 52, 258 N.E.2d 652, 656 (Ind. Ct. App. 1970). Duty, on the other hand, is merely one element of a negligence cause of action. Therefore, to

---

[5] Evansville and EPD also argue that Cox did not sufficiently raise this claim in her complaint to be entitled to raise it on summary judgment. Her complaint alleged a negligence claim, which includes the element of duty. Given our liberal notice pleading standards, we find that the complaint sufficiently preserved the issue of a non-delegable duty of care. Ind. Trial Rule 8(A).

conclude that an entity owes another person or entity a duty does *not* mean that liability necessarily attaches, as the person who was allegedly harmed must still prove breach, causation, and harm. *E.g.*, *Duby v. Woolf*, 76 N.E.3d 190, 196 (Ind. Ct. App. 2017). Here, the only thing we must determine is whether Evansville and EPD owed Cox a duty, which is not synonymous with deciding whether to impose strict liability.

[34]  Next, we turn to the central question—whether Evansville and EPD assumed a non-delegable duty of care to Cox. Evansville and EPD concede that such a duty existed when Officer Montgomery responded to the domestic scene, drove Cox home, and walked her to her door, admitting that she had surrendered control to him during that time. Cox Appellees' Br. p. 13-14. They argue, however, that as soon as she entered her home, she regained control and autonomy such that the non-delegable duty no longer existed. Essentially, they contend that "she was within her castle and had autonomy, control, and the right to protect her safety. When Officer [Montgomery] unlawfully entered and demanded sex, she had every right to take action to exercise control and protect herself, including locking herself in a room or ignoring Officer [Montgomery]." *Id.* at 16. Because Cox no longer had to surrender her control and autonomy to Officer Montgomery, Evansville and EPD insist that the duty no longer existed at that point.

[35]  Evansville and EPD are correct that we must focus on the nature of the relationship between Cox and Officer Montgomery at the time he followed her into her apartment and sexually assaulted her. *E.g.*, *Stropes*, 547 N.E.2d at 254

(noting that the focus of the analysis is the nature of the relationship at the time the tort was committed). As noted above, to determine whether Cox had surrendered her control and autonomy to Officer Montgomery, there are a number of factors to consider, including Officer Montgomery's assumption of the responsibility for Cox's safety, Cox's ability to control her environment, and Cox's ability to protect herself from harm. *Id.* at 254.

[36] We believe that the particular nature of this encounter is of utmost importance. Specifically, it was one continuous encounter that began when Officer Montgomery responded to the domestic scene and ended when he left Cox's residence after sexually assaulting her. Our analysis would, perhaps, be different had he allowed Cox to enter her residence and close her door, with him then knocking to request permission to reenter. It would be easier to find, under those circumstances, that one encounter ended and another, of a different nature, then began. Here, however, he simply followed Cox into her home, giving her no opportunity to end their interaction before he began assaulting her.

[37] The nature of the relationship between Officer Montgomery and Cox is critical to this analysis. And we can only conclude that the nature of their relationship remained the same from the beginning to the end of this encounter. Consequently, Officer Montgomery retained responsibility for Cox's safety throughout their interaction. As for Cox's abilities to control her environment and protect herself from harm, we note, first, that she was intoxicated—she had been drinking throughout the night, her girlfriend gave her car keys to Officer

Montgomery, and the officer found it necessary to drive her home. And while it is true that she was in her residence and technically able to attempt to fight against a sexual assault, it is also true that Officer Montgomery was in full uniform, which included his badge and gun. And throughout the night, their interaction involved Officer Montgomery's exercise of his official duties as an officer of the law.

[38] Under these circumstances, we find as a matter of law that Cox surrendered her autonomy and control to Officer Montgomery when he first responded to her girlfriend's home. She did not reclaim her autonomy and control by the simple act of walking through her front door when he followed right behind her. Therefore, Evansville and EPD owed a non-delegable duty of care to Cox and the trial court erred by granting summary judgment in their favor on this issue and by denying Cox's partial summary judgment motion. We reverse with instructions to grant Cox's motion with respect to the duty element of her claim and remand for further proceedings.

## D. Beyer

[39] Beyer's case is far more easily decided. She was under arrest. She was also extremely intoxicated, to a point that she was slipping in and out of consciousness and the hospital was reluctant to discharge her. Officer Rogers was ostensibly transporting her to lockup for six hours of medical observation, and she was barefoot and in handcuffs in the back of his marked police vehicle when he pulled her out to rape her. She was quite clearly wholly dependent on

the officer for her safety and survival and had no ability to control her environment or protect herself from harm. Under these circumstances, we have little difficulty concluding that, at the time of the sexual assault, Beyer had surrendered her control and autonomy to Officer Rogers. Consequently, as a matter of law, Fort Wayne owed a non-delegable duty of care to Beyer. The trial court erred by granting Fort Wayne's motion for summary judgment in this regard and we reverse that portion of its order and remand for further proceedings.

## II. Fort Wayne Cross-Appeal: Respondeat Superior

Next, Fort Wayne cross-appeals the trial court's order denying summary judgment on the respondeat superior theory of liability portion of Beyer's negligence claim. For the general principles underlying respondeat superior, we again turn to *Stropes*:

> Respondeat superior imposes liability, where none would otherwise exist, on an employer for the wrongful acts of his employee which are committed within the scope of employment. The Court of Appeals has stated, "In order to be within the scope of employment the employee must be in the 'service of the employer.'" *Shelby v. Truck & Bus Group Div. of GMC* (1989), Ind. App., 533 N.E.2d 1296, 1298. Acts for which the employer is not responsible are those done "on the employee's own initiative," *City of Crawfordsville v. Michael* (1985), Ind. App., 479 N.E.2d 102, 104, "with no intention to perform it as part of or incident to the service for which he is employed," *Gomez v. Adams* (1984), Ind. App., 462 N.E.2d 212, 223. However, an employee's wrongful act may still fall within the scope of his employment if his purpose was, to an appreciable extent, to

further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself. *Id.* Two cases decided under Indiana law have held employers liable for criminal acts of their employees, despite the fact that the crimes were committed to benefit the employee, because the criminal acts originated in activities so closely associated with the employment relationship as to fall within its scope.

547 N.E.2d at 247 (two cases cited to as holding employers liable for employees' criminal acts are *Gomez v. Adams*, 462 N.E.2d 212 (Ind. Ct. App. 1984) and *Tippecanoe Beverages v. S.A. El Aguila Brewing Co.*, 833 F.2d 633 (7th Cir. 1987)).

[41] The *Stropes* Court noted with approval that neither *Gomez* nor *Tippecanoe Beverages* were dismissed on summary judgment, inasmuch as there were factual questions that needed to be answered by a jury. *Id.* at 248-49. When a case involves an employee committing "some acts unquestionably within the scope of his employment" and other acts that were unquestionably "unauthorized by [the employer] and committed for [the employee's] own gratification," it should be sent to a jury:

> A jury presented with the facts of this case might find that [the employee] acted to an appreciable extent to further his master's business, that his actions were, "at least for a time, authorized by his employer, related to the service for which he was employed, and motivated to an extent by [his employer's] interests," and that, therefore, his wrongful acts fell within the scope of his employment and [the employer] should be accountable. Conversely, a jury might find that [the employee's] acts were so "divorced in time, place and purpose" from his employment

> duties as to preclude the imposition of liability on his employer. The nature of the acts were, at the very least, sufficiently associated with [the employee's] authorized duties to escape dismissal on summary judgment.

*Id.* at 250 (internal citations omitted); *see also, e.g.*, *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 107 (Ind. Ct. App. 2014) (holding that it is "well established that whether an employee's actions were within the scope of employment is a question of fact" and "[e]ven if some of the actions were unauthorized, the question of whether the actions were within the scope of employment is for the jury").

[42] Here, when Officer Rogers sexually assaulted Beyer, it was in the midst of performing a number of his official, authorized duties, including placing Beyer under arrest, transporting her to and from the hospital, placing her in handcuffs, and assuming the responsibility for her safety because of her incapacitated condition. While the ultimate acts of sexual assault may have been for his own personal gratification, the context in which they occurred was made possible by the authorized duties of his employment as a police officer. Under these circumstances, whether he was acting within the scope of his employment when he sexually assaulted Beyer is a question of fact for a jury. Therefore, the trial court properly denied Fort Wayne's summary judgment motion on this issue.

## Conclusion

[43] In the Cox case, the judgment of the trial court regarding the existence of a non-delegable duty is reversed and remanded for further proceedings. In the Beyer

case, the judgment of the trial court regarding the existence of a non-delegable duty is reversed, the judgment of the trial court regarding the respondeat superior claim is affirmed, and the matter is remanded for further proceedings.

May, J., and Brown, J., concur.