In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3155

JANE DOE,

*Plaintiff-Appellant,*

*v.*

VIGO COUNTY, INDIANA, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 16 C 124 — **William T. Lawrence**, *Judge.*

ARGUED APRIL 4, 2018 — DECIDED OCTOBER 3, 2018

Before WOOD, *Chief Judge*, and BAUER and SYKES, *Circuit Judges*.

WOOD, *Chief Judge*. Jane Doe seeks to hold Vigo County, Indiana, liable for the sexual misconduct of its employee, David Gray. Gray allegedly confined and sexually assaulted Doe while she volunteered at the park where he worked. The district court granted summary judgment in favor of Vigo County, finding that it was neither vicariously liable for Gray's wrongs nor directly liable for permitting them to

occur. We too conclude that the law does not permit Doe to pursue this action against the County.

## I

Gray worked as a maintenance specialist for the Vigo County Parks and Recreation Department. That job required him to perform various maintenance and groundskeeping duties at one of the county's parks. Notably for the present case, his tasks included cleaning restrooms and directing volunteers. At least some of those volunteers were completing court-mandated community service, and Gray was responsible for signing off on their time-logs. Gray performed his job with a high degree of autonomy, especially in the off-season when supervisors might visit the park only once every two to three weeks. Gray also worked independently of the other maintenance specialist assigned to his park.

Doe volunteered at the park where Gray worked to complete her court-ordered community service. She alleges that Gray brought her to the park's restroom area and told her that the facility required cleaning. After locking the door behind them, Gray allegedly forced Doe to perform oral sex and digitally penetrated her vagina. Gray ultimately was charged with rape, criminal confinement, and official misconduct; he pleaded guilty to the latter two offenses.

The record lists a handful of prior incidents of misconduct by employees of Vigo County over the past two decades. Some of these episodes involved sexual misconduct; as far as we can tell, however, none of them resulted in coerced sexual activity, nor does the record suggest that employee misconduct met with impunity. We detail them below when we discuss Doe's direct claim against the County. The record also

reflects two prior incidents involving Gray himself. The first was a vague comment made by a park visitor, perhaps motivated by a belief that Gray had attempted to pick up his wife; Vigo County was unable to substantiate the allegation. The second involved inappropriate comments that Gray had made to a coworker. That time Gray received a written reprimand, which caused him to correct his behavior (at least at that time).

Doe sued both Gray and Vigo County for damages under 42 U.S.C. § 1983 and various state-law theories that fell within the court's supplemental jurisdiction, 28 U.S.C. § 1367. Her complaint accused Gray of violating her rights under the Fourth and Eighth Amendments to the Constitution (made applicable to the states through the Fourteenth Amendment), and it asserted that Vigo County had a custom or policy that violated her constitutional rights. She also contended that Gray committed a number of state torts, and that Vigo County was both directly liable under state law for its own negligent retention and supervision of Gray and vicariously liable for Gray's torts as his employer.

Gray failed to appear, and the clerk of the district court entered a default against him. See FED. R. CIV. P. 55(a). The court, apparently awaiting the outcome of this appeal, has not yet granted a default judgment. It granted summary judgment in favor of Vigo County with respect to all claims against it. "[F]inding no just reason for delay," the court entered "partial final judgment in favor of" the county. See FED. R. CIV. P. 54(b). Doe appealed the judgment in favor of the County.

## II

Before reaching the merits of Doe's case, we consider the propriety of considering her appeal at this time. In most circumstances, courts of appeals have jurisdiction only over appeals from final judgments of the district court. A final judgment is defined as one that resolves "all claims against all parties." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 856 (7th Cir. 2017) (quoting *Dale v. Lappin*, 376 F.3d 652, 654 (7th Cir. 2004)); see also 28 U.S.C. § 1291. Rule 54(b) of the Federal Rules of Civil Procedure recognizes a partial exception to the completeness rule, however, authorizing the district court to enter final judgment with respect to fewer than all claims or parties "if the court expressly determines that there is no just reason for delay."

In the current case, the district court did not invoke Rule 54(b) by number, but it did state that there was "no just reason for delay" in entering "partial final judgment" for Vigo County. That satisfies the express determination requirement of Rule 54(b). *United States v. Ettrick Wood Prods.*, 916 F.2d 1211, 1217 (7th Cir. 1990). Moreover, while we strongly prefer the district court to explain its decision to enter judgment under Rule 54(b), its failure to do so here does not require a remand, because the record reveals that the court properly exercised its discretion. *Id.* at 1218. Granting summary judgment for Vigo County unambiguously disposed of all claims against it, and that judgment was final. *Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 821 (7th Cir. 1986). Any benefit from delaying Doe's appeal, either with respect to judicial economy or any other factor, is difficult to imagine. Gray has defaulted. Vigo County has defended this suit on legal grounds that do not depend on the veracity of Doe's accusations or the extent

of her still-to-be-determined damages. Therefore, this appeal will not "create needless duplication of effort[s] to resolve the parties' entire dispute." *VDF FutureCeuticals, Inc. v. Steifel Labs., Inc.*, 792 F.3d 842, 845 (7th Cir. 2015). In fact, to forbid appeal until the district court assesses damages and enters final judgment against Gray would simply serve to invite Doe and Vigo County to duplicate their present efforts at a later date. *Id*. Therefore, Doe's appeal is properly before us.

**III**

We first address the question whether Doe may hold Vigo County vicariously liable for Gray's sexual misconduct. A defendant such as Vigo County is entitled to summary judgment if it shows that the material facts, construed most favorably to the plaintiff, could not establish its liability as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). We assess the propriety of granting summary judgment *de novo*. *Bunch v. United States*, 880 F.3d 938, 941 (7th Cir. 2018).

To the extent that Doe is relying on the County's liability pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), she is not using a theory of vicarious liability. We address her *Monell* claim in Part IV, below. To the extent that she is pursuing state-law claims against the County, it is Indiana's law that determines the County's responsibility for the acts of its employee. She cannot hold the County vicariously liable under section 1983, see *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), and so we do not pursue that possibility further.

Indiana law generally holds an employer vicariously liable for an employee's wrongs only where the latter "has inflicted harm while acting 'within the scope of employment.'"

*Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008) (quoting *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 148 (Ind. 1999), and *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 105 (Ind. 1997)). That requirement is met if the employee's torts were "incidental to the conduct authorized" or furthered the business of the employer "to an appreciable extent." *Id.*; see also *id.* at 286 (suggesting the wrong might either "further [the] employer's business" or be "motivated … by his employer's interests"); *Stropes ex rel. Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989) ("[A]n employee's wrongful act may still fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself."). The employer need not order or desire the employee to commit the wrongful act; it may even forbid such conduct expressly. *Warner Trucking, Inc.*, 686 N.E.2d at 105.

The Supreme Court of Indiana has explained how these general principles of *respondeat superior* map onto sexual misconduct by employees. In doing so, it has stressed the physical, indeed intimate, contact that a job must require before vicarious liability will attach. See *Barnett*, 889 N.E.2d at 286. *Barnett* gives four examples, the first of which comes from *Stropes*. *Stropes* held that a residential institution for physically and intellectually disabled youth might be liable for an employee's sexual assault of a boy committed to its care. 547 N.E.2d at 250. As *Barnett* stressed, the employee in *Stropes* was charged with bathing, dressing, feeding and changing the linens of the boy, and the employee was authorized, when performing these duties, to touch the boy's genitals, give him a comforting pat, and physically restrain him. *Barnett*, 889 N.E.2d at 284–85 (discussing *Stropes*, 547 N.E.2d 244).

Thus, the employee's wrongful actions were "sufficiently associated with [the employee's] authorized duties" to preclude summary judgment for the employer. *Id*. (quoting *Stropes*, 547 N.E.2d at 250). *Barnett* likewise explained that a Little League could be held liable for an equipment manager who molested and viewed the genitals of players, often while outfitting them, because the misconduct was "sufficiently associated with conduct by the manager that the defendant league had authorized, including fitting the boys with uniforms." *Id.* at 285 (discussing *Southport Little League v. Vaughan*, 734 N.E.2d 261 (Ind. Ct. App. 2000)).

*Barnett* contrasted these cases with both *Konkle v. Henson*, 672 N.E.2d 450 (Ind. Ct. App. 1996), and its own fact pattern. In *Konkle*, a minister's molestation of children did not create vicarious liability for his church. *Id*. at 457. As *Barnett* explained, mere access to children in the congregation was not enough where his acts were "not similar to his duties as a minister." *Barnett*, 889 N.E.2d at 285 (quoting *Konkle*, 672 N.E.2d at 457). Finally, in *Barnett* itself, the Supreme Court of Indiana refused to extend liability to the trustee of a township (*i.e.*, its executive) for sexual misconduct committed by a deputy trustee. In express contrast to *Stropes*, the duties of the deputy trustee meant that "[o]ther than perhaps a greeting handshake, [he] was not explicitly or impliedly authorized to touch or confine applicants for assistance." *Id*. at 286. Therefore, "[h]is alleged acts of confining, sexually touching, and raping the plaintiff" could not be framed as "an extension of authorized physical contact." *Id*. Because the acts "were not incidental to nor sufficiently associated with the deputy trustee's authorized duties," "did not further his employer's business," and "were not motivated to any extent by his employer's interests," the doctrine of *respondeat superior* did not apply. *Id*.

Like the employees in *Barnett* and *Konkle*, and unlike those in *Stropes* and *Southport Little League*, touching others intimately was neither directly authorized by the County nor incidental to Gray's duties. Nothing in the record suggests that Gray's job involved physical contact with visitors or other staff members, let alone their confinement. Cleaning facilities, clearing fallen trees, and keeping trails in a state of good repair may not even have required interacting with others. Gray completed many of his tasks without assistance from a coworker. Gray may have directed the work of park volunteers and signed their logs; nonetheless, as in *Konkle*, his employer is not liable for Doe's abuse merely because Gray's job gave him access to his victim. Finally, we do not see how Gray's treatment of Doe could possibly have furthered the interests of Vigo County, nor does even a scrap of evidence suggest that Gray intended his conduct to do so. Therefore, according to the ordinary principles of *respondeat superior*, Vigo County need not answer for the wrong of its employee.

Even if ordinary vicarious liability does not apply, however, Doe urges that Vigo County is liable for the harm caused by Gray because the County, like a common carrier, owed her a non-delegable duty of protection. Because Doe failed to raise this argument in district court, she has waived it. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Moreover, even if we were to treat this as a forfeiture and reach the issue, the extension of common-carrier responsibility to an entity in the County's position would represent enough of an expansion of Indiana law that we would not find obvious error. As a federal court, we must take Indiana law as it is, not as it may become.

The record, as Doe has presented it to us, does not suggest that Vigo County served her in a manner analogous to a common carrier by offering a venue where she could complete community service. (We do not understand Doe to take the still-less supportable position that Vigo County owes a non-delegable duty to any user of its parks. Ordinary park users come and go as they please, use its facilities as they choose, and may be no more vulnerable to harm than the population at large.) In Indiana, the common-carrier doctrine is "premised on the control and autonomy surrendered by the passenger to the carrier." *Stropes*, 547 N.E.2d at 252. Based on this premise, Indiana has extended the doctrine to residential homes for the disabled, *id.* at 253–54, jailors, *Robins v. Harris*, 740 N.E.2d 914, 917–18 (Ind. Ct. App. 2000), *summarily aff'd in relevant part*, 769 N.E.2d 586, 586 (Ind. 2002), police escorting an intoxicated victim to her residence, *Cox v. Evansville Police Dep't*, 84 N.E.3d 678, 689–90 (Ind. Ct. App. 2017), and police holding arrestees in custody, *id*. at 690, among other contexts.

While Doe may have felt pressured to submit to Gray's directives because she was completing her mandated community service there, we do not have evidence indicating that Doe was compelled to volunteer at this particular park, nor anything suggesting that she was not free to leave its grounds. Her autonomy and her ability to control her own environment were no more diminished by her community-service obligation than was that of the drug user who sought outpatient treatment in *L.N.K. ex rel. Kavanaugh v. St. Mary's Med. Ctr.*, 785 N.E.2d 303, 308 (Ind. Ct. App. 2003) (finding no non-delegable duty). Nor was she any less autonomous than the public-school students in *Hansen v. Bd. of Trs. of Se. Sch. Corp.*, 551 F.3d 599, 615 (7th Cir. 2008) (applying Indiana law and finding no non-delegable duty). Were Doe required to

complete her community service at a Vigo County park and to comply with Gray's directives, her case might approximate *Robins* or *Cox*; the record before us, however, does not permit that inference.

**IV**

Each of Doe's remaining theories of liability requires evidence that Vigo County failed to take seriously or to address a risk of sexual violence posed by employees, including Gray. Our *de novo* look at the record satisfies us that no trier of fact could find either the risk Doe asserts or the County's insouciance toward employee misconduct.

Doe claims that Vigo County adopted a custom or practice of failing to prevent or respond to employees' sexual misconduct, and that the custom or practice it adopted was the cause of the violation of her civil rights. Under 42 U.S.C. § 1983, a plaintiff can recover against a local government "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels"; nonetheless, "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S. at 690–91. The offending custom must be "widespread and well settled," *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010), and the plaintiff must show that the local policymakers were, at a minimum, "deliberately indifferent as to [the] known or obvious consequences" of their inaction with respect to the custom, *id.* (quoting *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). Doe needs to establish both officials' "aware[ness] of the risk created by the custom" and their "fail[ure] to take appropriate steps to protect" her from it. *Id.*

The record refers to a handful of incidents of misconduct by employees of Vigo County over the past two decades. Some involved sexual misconduct, but none resulted in coerced sexual activity, nor does the record suggest that employee misconduct occasioned impunity. In 1996 a jail guard was prosecuted for having sexual contact with an inmate at the county jail. In 2008 the county recorder resigned and pleaded guilty to battery for groping an employee. Sometime before May 2013, a parks department mechanic was accused of inappropriately cornering one coworker, telling another that he wanted to have sex with her, and placing his hands on the latter's breast and down her pants. That same mechanic was also suspected of misusing park resources. The County permitted him to resign, along with two colleagues, rather than face termination and the formal documentation of his malfeasance. (The record does not specify whether the colleagues resigned because of accusations of sexual harassment, misuse of resources, or both.) A different parks department employee was fired, probably in early 2015, for allegedly treating coworkers poorly and making an "off-color" comment to another employee. Finally, there are two incidents mentioned in passing without any information about their resolution: first, Gray stated in his deposition that a parks department supervisor made an accusation of sexual harassment in 2009 or 2010; and second, a civil complaint was filed in 2014 by a highway department employee accusing her supervisor of sexual harassment.

As we noted earlier, the record also reflects two prior incidents involving Gray himself: the vague complaint from a park visitor about Gray attempting to pick up the visitor's wife; and alleged inappropriate comments that Gray had made to a coworker. Gray received a written reprimand about

the latter, which caused him to correct his behavior at that time.

This is not enough to establish a custom or practice that gave rise to Doe's injuries, nor can it support a finding of indifference on the part of Vigo County officials. The record contains no evidence of any county employee in the past having forced another to engage in a sexual act or having confined an individual to harm her. While Doe has cited cases of sexual harassment by county employees and a few instances of inappropriate physical contact, a handful of incidents spread over twenty years hardly amounts to a widespread custom. Even were we to pretend that they did, Doe would still need to prove that such a custom caused her injuries. *Id.* The earlier behavior Doe recounts, though sometimes vile, is different in kind from the trauma Doe experienced. Likewise, Doe has not established a sufficient causal nexus between her allegation that the county condoned illicit alcohol consumption by park visitors and the proposition that park employees felt free to commit sexual assault.

Perhaps most significantly, the record affirmatively shows that Vigo County was not deliberately indifferent toward sexual misconduct by employees. Vigo County addressed these incidents. The employees concerned were fired, reprimanded, forced to resign, and even prosecuted. When complaints arose against Gray himself, the County took action. A vague complaint resulted in an inquiry. Sexualized comments to a coworker resulted in a written warning that appeared to have corrected his behavior. Doe suggests that accepting resignations in lieu of firings reflected the County's deliberate indifference. We disagree. Were such resignations used to facilitate a culture of impunity—perhaps by permitting other

departments to rehire the sexual aggressors—the situation might be different. But the record shows only that resignations were used as a means of punishment. We also reject out of hand Doe's suggestion that permitting male park employees to work alone with women evidences deliberate indifference toward sexual misconduct. Integrating workplaces is not a green light for misconduct; rather, it is a positive feature of modern society.

## V

Doe's negligent supervision and retention claims fare no better. Indiana has adopted the Restatement (Second) of Torts to govern such claims. *Clark v. Aris, Inc.*, 890 N.E.2d 760, 763 (Ind. Ct. App. 2008); see also *Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1179 (Ind. 2017). Thus, if additional requirements are satisfied, a "master is under a duty to exercise reasonable care so to control his servant … to prevent him from intentionally harming others … if … the master … knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts § 317. If the master can effectively exercise control over the servant only by discharging him, "the master may subject himself to liability … by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others." *Id*. at cmt. c. As in a general action for negligence, the master's duty arises only where the harm is sufficiently foreseeable. *Clark*, 890 N.E.2d at 763. This requirement is met if, looking to the "broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence," *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 391 (Ind. 2016) (quoting *Goldsberry v. Grubbs*, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996)), there was "some

probability or likelihood of harm … serious enough to induce a reasonable person to take precautions to avoid it," *id*. at 392 (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008)).

The record does not establish enough of a likelihood of the type of harm suffered by Doe to have obligated Vigo County to prevent its occurrence. For example, Doe puts forth no evidence that park-goers, in either Vigo County or elsewhere, face an appreciable risk of harm from the intentional acts of public employees—let alone from battery or sexual assault. The same goes for volunteers completing court-ordered community service. Doe has not pointed to evidence indicating that Vigo County, or local governments generally, had a history of employees attacking members of the public or had any reason to expect that such attacks would occur. She has not demonstrated that Gray's conduct foreshadowed the threat he would pose to Doe. A business is not alerted to the possibility that an employee might rape a member of the public by having faced the occasional, but unfortunate, predicament of employee sexual harassment, including groping. In short, nothing in the record would allow a trier of fact to find that Vigo County knew or should have known of the need to protect women in Doe's position from employees such as Gray. Doe also points to no precedent suggesting that Indiana might impose such a duty on local governments or other employers as a general matter.

Nor do we see how Vigo County could have breached a duty to Doe had one been owed. As discussed above, the County investigated but could not substantiate one vague complaint against Gray, and it warned him for making sexualized comments to a coworker. That reprimand appeared to

have worked until the incident that triggered this case. We see no warrant in Indiana law for the premise that an employer acts negligently whenever it chooses a response to sexual harassment short of termination. Allowing a groundskeeper or volunteer coordinator to work independently also does not strike us as evidence of breach, and Doe has not pointed to any case law suggesting the contrary. Although the record contains suggestions of past corruption by Gray in his supervision of volunteers, the evidence suggests neither that Vigo County learned of that misconduct nor that such corruption should have alerted it to the possibility of Gray's sexual violence. Finally, we reject Doe's suggestion that "allowing male workers to supervise female volunteers" fosters an unacceptable risk of sexual assault—or any other offense for that matter. In fact, a rule barring sexes from working together would raise significant concerns about discrimination. Vigo County's retention and supervision of Gray do not demonstrate a lack of due care.

Doe's allegations describe a horrific incident that no one should have to endure. But Indiana law does not require the County to answer for Gray's sexual misconduct, nor has Doe presented enough to support a *Monell* claim. Neither has she presented enough to move forward on her other state-law theories against the County. We therefore AFFIRM the district court's grant of summary judgment for Vigo County.